[No. A085177. First Dist., Div. Five. Feb. 28, 2000.]

MICHAEL SCHMIER, Plaintiff and Appellant, v.
THE SUPREME COURT OF CALIFORNIA et al., Defendants and
Respondents.

704

## COUNSEL

Kenneth J. Schmier; Jeanne M. Fahey; and Patrice M. Brymner for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Manuel M. Medeiros, Assistant Attorney General, Andrea Lynn Hock and Tom Blake, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**HANING, J.**—Michael Schmier (appellant) appeals the dismissal of his complaint for injunctive relief and writ of mandate after the demurrer of

respondents, the Supreme Court of California, the Court of Appeal of California and the Judicial Council of California, was sustained without leave to amend. Appellant seeks to enjoin respondents from enforcing the rules governing publication of opinions (California Rules of Court,[1] rules 976-979), contending they are unconstitutional and conflict with statutory law.

## BACKGROUND

Rule 976(b) provides that no opinion of the Court of Appeal may be published in the Official Reports unless it "(1) establishes a new rule of law, applies an existing rule to a set of facts significantly different from those stated in published opinions, or modifies, or criticizes with reasons given, an existing rule; [¶] (2) resolves or creates an apparent conflict in the law; [¶] (3) involves a legal issue of continuing public interest; or [¶] (4) makes a significant contribution to legal literature by reviewing either the development of a common law rule or the legislative or judicial history of a provision of a constitution, statute, or other written law." Rule 976(c) provides that a Court of Appeal opinion shall not be published unless a majority of the court rendering the opinion certifies that it meets one of the standards of rule 976(b). It further provides that a Court of Appeal "opinion certified for publication shall not be published, and an opinion not so certified shall be published, on an order of the Supreme Court to that effect."

An opinion that is not certified for publication cannot subsequently be cited as legal authority or precedent, except as relevant to the doctrines of law of the case, res judicata, or collateral estoppel, or as relevant to a criminal or disciplinary action because the opinion states reasons for a decision that affects the same defendant or respondent in another action. (Rule 977.)

Rule 978 sets forth the procedure for requesting publication of a Court of Appeal opinion not certified for publication by that court. If the Court of Appeal does not honor the request, rule 978 obligates the Supreme Court to then rule on the request. Rule 979 sets forth a similar scheme pertinent to depublication.

Appellant, individually and purportedly on behalf of all persons similarly situated, filed an action for injunctive relief and writ of mandate to compel respondents to publish all Court of Appeal opinions and to permanently enjoin them from enforcing the rules governing publication. He contends the rules violate the federal and state constitutional doctrine of separation of

---

[1] Unless otherwise indicated, all further rule references are to the California Rules of Court.

powers and the constitutional rights to petition the government for redress of grievances, freedom of speech, due process and equal protection. He further contends that the rules violate Civil Code section 22.2, which states that the common law of England is the rule of decision of all California state courts unless inconsistent with the federal Constitution or the state Constitution or statutes and the doctrine of stare decisis.

Respondents demurred primarily on the ground the trial court lacked subject matter jurisdiction because the Supreme Court alone is vested with the responsibility to regulate the publication of Court of Appeal opinions.

The trial court sustained the demurrer without leave to amend and ordered the case dismissed.

## DISCUSSION

■ In reviewing the sufficiency of a complaint against a general demurrer, we treat the demurrer as admitting all material facts properly pleaded. When a demurrer has been sustained without leave to amend, we determine if there is a reasonable possibility the defect can be cured by amendment; if so, we reverse. The burden of proving such a reasonable possibility lies with the plaintiff. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

I

■ Preliminarily, we observe that the complaint lacks facts sufficient to establish the requisite element of appellant's standing to bring the action. ■ A person who invokes the judicial process lacks standing if he, or those whom he properly represents, "does not have a real interest in the ultimate adjudication because [he] has neither suffered nor is about to suffer any injury of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented." (*California Water & Telephone Co. v. County of Los Angeles* (1967) 253 Cal.App.2d 16, 22-23 [61 Cal.Rptr. 618], fn. omitted.) When a complaint fails to state a cause of action in favor of the plaintiff, a demurrer for failure to state a cause of action will be sustained. (*Parker v. Bowron* (1953) 40 Cal.2d 344, 351 [254 P.2d 6].)

Where the enforcement of a rule may cause irreparable injury, only *the injured party* may attack its constitutionality by an action to enjoin its enforcement. (*McKay Jewelers, Inc. v. Bowron* (1942) 19 Cal.2d 595, 599 [122 P.2d 543, 139 A.L.R. 1188].) A writ of mandate is granted " 'only where necessary to protect a substantial right and only when it is shown that

some substantial damage will be *suffered by the petitioner* if said writ is denied.' " [Citations.]" (*Parker v. Bowron, supra,* 40 Cal.2d at p. 351, italics added.) It will not lie where it is apparent the petitioner has " ' "no direct interest in the action sought to be coerced, and that no benefit can accrue to him from its performance." ' [Citation.]" (*Ibid.*)

 Appellant's complaint alleges that "in numerous cases" the Supreme Court and Court of Appeal have refused the requests of unidentified litigants and others to publish a Court of Appeal decision, and contains the vague allegation that the depublication rules deprive criminal defendants of "the right to cite a case otherwise favorable and controlling of [their] fate." However, the complaint does not identify any specific injury appellant or those he purports to represent have suffered or will suffer due to the nonpublication or depublication of an appellate opinion. Absent such an allegation, appellant lacks standing in this action. However, as discussed below, even were he able to allege a specific situation wherein nonpublication harmed or would harm him, he would be unable to state a viable cause of action.

## II

The Judicial Council of California is constitutionally empowered to adopt rules for court administration, practice and procedure, providing they are not inconsistent with statute. (Cal. Const., art. VI, § 6.) The consistency of a rule is tested against the statutory scheme the rule was intended to implement. (See *People v. Hall* (1994) 8 Cal.4th 950, 959-960 [35 Cal.Rptr.2d 432, 883 P.2d 974].)

California Constitution, article VI, section 14 requires the Legislature to provide for the prompt publication of such opinions of the Courts of Appeal "as the Supreme Court deems appropriate." Government Code section 68902 states: "Such opinions . . . of the courts of appeal . . . as the Supreme Court may deem expedient shall be published in the official reports [which] shall be published under the general supervision of the Supreme Court." The broad constitutional and legislative authority granting the Supreme Court selective publication discretion manifests a policy that California's highest court, with its supervisory powers over lower courts, should oversee the orderly development of decisional law, giving due consideration to such factors as (a) "the expense, unfairness to many litigants, and chaos in precedent research," if all Court of Appeal opinions were published, and (b) whether unpublished opinions would have the same precedential value as published opinions. (*People v. Valenzuela* (1978) 86 Cal.App.3d 427, 441 [150 Cal.Rptr. 314] (dis. opn. of Jefferson, J.) [addressing issue not addressed in maj. opn.].) By providing the mechanism for realizing this policy,

the rules are consistent with the statutory scheme they were intended to implement.

Contrary to appellant's assertion, the rules do not conflict with Civil Code section 22.2, which provides that "[t]he common law of England, so far as it is not repugnant to or inconsistent with the Constitution of the United States, or the Constitution or laws of this State, is the rule of decision in all the courts of this State." As used in this statute, "common law of England" refers to "the whole body of that jurisprudence as it stood, influenced by statute, at the time when the code section was adopted." (*Martin v. Superior Court* (1917) 176 Cal. 289, 293 [168 P. 135].) Common law is now largely codified in California (see, e.g., Civ. Code, § 4; Code Civ. Proc., § 4; Pen. Code, § 4), and statutes are presumed to codify common law rules, absent clear language disclosing an intent to depart therefrom. (*Saala v. McFarland* (1965) 63 Cal.2d 124, 130 [45 Cal.Rptr. 144, 403 P.2d 400]; *People v. Zikorus* (1983) 150 Cal.App.3d 324, 330 [197 Cal.Rptr. 509]; see also Civ. Code, § 5.)

However, neither the Legislature nor the courts are precluded from modifying or departing from the common law, and frequently do. A well-known departure, for example, is the community property system, whereby the Legislature incorporated Spanish law rather than the English common law rules pertinent to the marital estate. (*Roberts v. Wehmeyer* (1923) 191 Cal. 601, 611 [218 P. 22].) Similarly, the Legislature enacted a system of discovery in civil cases (Code Civ. Proc., § 2016 et seq.) by substantially adopting the federal rules of discovery (*Greyhound Corp. v. Superior Court* (1961) 56 Cal.2d 355, 375 [15 Cal.Rptr. 90, 364 P.2d 266]), which in turn established a pretrial factfinding mechanism with a breadth not contemplated at common law (see *Hickman v. Taylor* (1947) 329 U.S. 495, 500-501 [67 S.Ct. 385, 388-389, 91 L.Ed. 451], & fns. therein).

Appellant has not cited and we are unaware, of any common law rule governing the publication or citation of opinions. To the extent appellant suggests that the common law of England requires that all appellate decisions will be published and may be cited as authority, such a rule is inconsistent with the Constitution and laws of this state, including the rules of court, which have the force of positive law. (*Villa v. Superior Court* (1981) 124 Cal.App.3d 1063, 1065 [177 Cal.Rptr. 752].) ▪ "As a rule of conduct, [common law] may be changed at the will of the [L]egislature, unless prevented by constitutional limitations. The great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to the changes of time and circumstances. [Citation.]" (*People v. Hickman* (1928) 204 Cal. 470, 479 [268 P. 909].) By specifically empowering the Supreme Court to determine which opinions of the Court of Appeal are

appropriate for publication, the Legislature and the electorate have clearly disclosed an intent that the decisional law of this state does not require publication of every opinion of the intermediate appellate courts. Rather, the Supreme Court appropriately determines by selective publication the evolution and scope of this state's decisional law.

Nor do the rules contravene the doctrine of stare decisis, which obligates inferior courts to follow the decisions of courts exercising superior jurisdiction. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Although the doctrine embodies an important social policy by representing an element of continuity in law and serving the psychological need to satisfy expectations, it is a principle of judicial policy, not a rule of constitutional or statutory dimension. (See *Helvering v. Hallock* (1940) 309 U.S. 106, 119 [60 S.Ct. 444, 451, 84 L.Ed. 604, 125 A.L.R. 1368].) Therefore, the Supreme Court—California's highest court—is the appropriate body to establish policy for determining those Court of Appeal opinions entitled to the precedential value of the stare decisis doctrine.

Relying principally on *James B. Beam Distilling Co. v. Georgia* (1991) 501 U.S. 529 [111 S.Ct. 2439, 115 L.Ed.2d 481] (*Beam*), appellant claims the rules violate the constitutional guarantees of due process and equal protection (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a)) by creating a system of selective prospectivity that allows courts to create a new rule of law applicable to a single case. As articulated in *Beam*, selective prospectivity occurs when a court expressly overrules a decisional precedent, but applies the new rule only to the case in which the new rule is announced, returning to the old rule with respect to all other cases arising on facts predating the pronouncement of the new rule. (501 U.S. at pp. 534-537 [111 S.Ct. at pp. 2442-2444].) *Beam* held that in civil as well as criminal cases, when the court applies a new rule of law to litigants in one case, "it must do so with respect to all others not barred by procedural requirements or res judicata." (*Id.* at pp. 538, 544 [111 S.Ct. at pp. 2444, 2448].) As *Beam* also observed, opinions that overrule precedent are rare. "In the ordinary case, no question of retroactivity arises. Courts are as a general matter in the business of applying settled principles and precedents of law to the disputes that come to bar. [Citation.] Where those principles and precedents antedate the events on which the dispute turns, the court merely applies legal rules already decided, and the litigant has no basis on which to claim exemption from those rules." (*Id.* at p. 534 [111 S.Ct. at pp. 2442-2443].)

The rules protect against selective prospectivity by providing a uniform and reasonable procedure to assure that actual changes to existing precedential decisions are applicable to all litigants. They require that *all* opinions of the state's highest court be published. (Rule 976(a).) They establish comprehensive standards for determining publication of Court of Appeal cases,

particularly specifying that an opinion announcing a new rule of law or modifying an existing rule be published. (Rule 976(b).) They permit any member of the public to request the Court of Appeal to publish an opinion and, if the request is denied, require the Supreme Court to rule thereon. (Rule 978.) In short, the rules assure that all citizens have access to legal precedent, while recognizing the litigation fact of life expressed in *Beam* that most opinions do not change the law. If appellant's view prevailed, the Supreme Court would be unable to decertify opinions for publication, which would seriously compromise its ability to control the direction of appellate precedent.

The validity of the publication rules finds support in the parallel rules of the federal court system. In the Court of Appeals for the Ninth Circuit, for example, only opinions, not memoranda, are published. (See U.S. Cir. Ct. Rules (9th Cir.), rules 36-1, 36-2 & 36-3, 28 U.S.C.) Ninth Circuit rule 36-3, like California Rules of Court, rule 977, provides that dispositions other than opinions and orders designated for publication are not precedent and may not be cited except as relevant to law of the case, res judicata or collateral estoppel.

Appellant either misunderstands or ignores the realities of the intermediate appellate process. If appellant's view prevailed, the Court of Appeal would be required to publish all *Wende*[2] opinions. As every criminal lawyer knows, a *Wende* case is one in which appellate counsel in a criminal appeal advises the court that no arguable appellate issues can be found, thereby invoking the obligation of the Court of Appeal to conduct an independent review of the record. A typical *Wende* opinion merely recites that the court's independent review has revealed no arguable issues. We have appeals from criminal defendants who enter into plea bargains in which they agree, for example, to accept the midterm as their sentence, and then appeal contending the court abused its discretion by sending them to prison. We also have appeals in criminal cases which challenge the constitutionality of the reasonable doubt instruction, in spite of the fact that every appellate court which has ruled thereon has found it to pass constitutional muster. (See, e.g., *People v. Hearon* (1999) 72 Cal.App.4th 1285, 1286-1287 [85 Cal.Rptr.2d 424]; *People v. Aguilar* (1997) 58 Cal.App.4th 1196, 1207-1209 [68 Cal.Rptr.2d 619].) We have appeals in family law cases where the trial court has divided the community assets equally, as it is required to do; but one of the parties nevertheless appeals for reasons having nothing to do with the law or the facts, conceding the equal division, but contending he or she failed to receive one of the assets that party wanted. We have appeals from parties seeking relief based on matters outside the appellate record, which

---

[2]*People v. Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071].

we cannot review. We have appeals from nonlawyers appearing in propria persona, filing incomprehensible briefs with no understanding of the rules of appellate review, urging us to reweigh the evidence and reject, for example, the testimony of the six witnesses who said the traffic signal was red rather than green when appellant drove through it and struck the pedestrian in the crosswalk. Our typical opinions in such cases add nothing to the body of stare decisis, and if published would merely clutter overcrowded library shelves and databases with information utterly useless to anyone other than the actual litigants therein and complicate the search for meaningful precedent. Appellant fails to explain how or why such opinions contribute to the corpus juris.

Finally, in closing, we address appellant's erroneous notion that nonpublication equates with secrecy. It hardly needs mentioning that opinions, rulings and orders of the Court of Appeal are public records, open to all. Indeed, the nonpublished opinions are not only available to the public, but frequently become the subject of media broadcasts and publications. One can now track the progress of cases in the First District through the Internet, and the other appellate districts will soon be online as well. The fact that opinions are not published in the Official Reports means nothing more than that they cannot be cited as precedent by other litigants who are not parties thereto. But they are certainly available to any interested party.

### CONCLUSION

An injunction cannot be granted to prevent the exercise of a public office "in a lawful manner, by the person in possession." (Code Civ. Proc., § 526, subd. (b)(6).) The rules were established by persons in possession of a public office with authority to do so, and they comport with applicable statutory and constitutional requirements. Since an injunction will not lie to restrain respondents from implementing them, appellant has not stated and cannot state a claim entitling him to relief. (Code Civ. Proc., § 430.10, subd. (e.)

### DISPOSITION

The judgment of dismissal is affirmed.

Jones, P. J., and Stevens, J., concurred.

A petition for a rehearing was denied March 22, 2000, and appellant's petition for review by the Supreme Court was denied May 24, 2000.