117 Cal.Rptr.2d 497 (2002)
96 Cal.App.4th 873
Michael SCHMIER, Plaintiff and Appellant,
v.
The SUPREME COURT OF CALIFORNIA et al., Defendants and Respondents.
No. A094408.
Court of Appeal, First District, Division Five.
March 4, 2002.
*499 Kenneth J. Sehmier, for plaintiff and appellant.
Bill Lockyer, Attorney General of the State of California, Manuel M. Medeiros, Senior Assistant Attorney General, Kenneth R. Williams, Supervising Deputy Attorney General, Tom Blake, Deputy Attorney General, for defendants and respondents.
JONES, P.J.
Plaintiff and appellant Michael Sehmier appeals the order denying his request for attorney fees under the "private attorney general" statute. (Code Civ. Proc, § 1021.5.[1]) He contends that even though he was not, technically, the successful party in the underlying action, his litigation to require publication of all California Court of Appeal opinions conferred a significant benefit on the public, thereby entitling him to such fees.

BACKGROUND
The California Rules of Court provide that no opinion of the Court of Appeal may be published in the Official Reports unless it meets one of four criteria. Briefly stated, the criteria are: establishment of a new rule of law, resolution of a conflict in the law, issue of continuing legal interest, or substantial review of the history of a common law rule or statute. (Cal. Rules of Court,[2] rule 976(b).) In order to be published in the official reports, appellate[3] *500 opinions must be certified for publication. If they are not certified they may not be subsequently cited as legal authority. (Rule 977.) The rules establish a procedure for requesting publication of appellate opinions, first from the Court of Appeal, and then from the Supreme Court. (Rule 978.)
Appellant sought injunctive relief and a writ of mandate to compel respondents, the Supreme Court of California, the Courts of Appeal of California and the Judicial Council of California, to publish all appellate opinions and to enjoin them permanently from enforcing the rules governing publication. (Schmier v. Supreme Court (2000) 78 Cal.App.4th 703, 706, 93 Cal.Rptr.2d 580 [Schmier I].) The trial court dismissed the action after sustaining respondents' demurrer without leave to amend, this court affirmed the dismissal, and the California Supreme Court denied appellant's petition for review. (Id. at pp. 707, 712, 93 Cal.Rptr.2d 580.)
After the remittitur issued, entitling respondents to recover costs, appellant moved for an award of attorney fees under section 1021.5 on the ground Schmier I secured an important right affecting the public interest. He identified the important right as "a restriction on the previously unfettered discretion of the appellate courts' decision to publish or not publish appellate[ ] opinions." The trial court concluded that appellant's litigation of Schmier I did not meet the criteria of section 1021.5 and denied the motion.

DISCUSSION

Standard of Review
Section 1021.5 permits a court to award attorney fees "to a successful party" against an opposing party "in any action which has resulted in the enforcement of an important right affecting the public interest" if a significant benefit has been conferred on the general public or a large class of persons and the necessity and financial burden of private enforcement make the award appropriate. Whether to award fees under this statute lies within the trial court's traditional equitable discretion, which will not be disturbed on appeal absent a showing of abuse. (Crawford v. Board of Education (1988) 200 Cal.App.3d 1397, 1405-1406, 246 Cal.Rptr. 806; Williams v. San Francisco Bd. of Permit Appeals (1999) 74 Cal.App.4th 961, 964, 88 Cal.Rptr.2d 565.)

Successful Party Status under Section 1021.5
The threshold requirement for a fee award under section 1021.5 is to be a "successful party." (Urbaniak v. Newton (1993) 19 Cal.App.4th 1837, 1842, 24 Cal. Rptr.2d 333.) As used in section 1021.5, "successful" is synonymous with "prevailing." (19 Cal.App.4th at p. 1843, fn. 4, 24 Cal.Rptr.2d 333.)
A favorable final judgment is not a prerequisite for "successful party" designation under section 1021.5; the critical fact in ascertaining "successful party" status is the impact of the action. (Maria P. v. Riles (1987) 43 Cal.3d 1281, 1291, 240 Cal.Rptr. 872, 743 P.2d 932 (Maria P.).) The trial court must assess the litigation realistically and determine, from a practical perspective, whether the action served to vindicate an important right so as to justify a fee award. (Ibid.)
"Successful party" status requires a causal connection between the plaintiffs lawsuit and the relief obtained. (Maria P., supra, 43 Cal.3d at p. 1291, 240 Cal.Rptr. 872, 743 P.2d 932.) "An award *501 of attorney fees under section 1021.5 is appropriate when a plaintiffs lawsuit `"was a catalyst motivating defendants to provide the primary relief sought,"' or when plaintiff vindicates an important right `"by activating defendants to modify their behavior."' [Citations.]" (43 Cal.3d at pp. 1291-1292, 240 Cal.Rptr. 872, 743 P.2d 932.)
"At bottom, the inquiry is an intensely factual, pragmatic one that frequently requires courts to go outside the merits of the precise underlying dispute and focus on the condition that the fee claimant sought to change." (Crawford v. Board of Education, supra, 200 Cal. App.3d at p. 1407, 246 Cal.Rptr. 806.) Using that condition as a benchmark, the court asks if the outcome of the litigation is one to which the "`fee claimant's efforts contributed in a significant way, and which does involve an actual conferral of benefit or relief from burden when measured against the benchmark condition.'" (Folsom v. Butte County Assn. of Governments (1982) 32 Cal.3d 668, 685, 186 Cal. Rptr. 589, 652 P.2d 437.)
The "condition" appellant's action sought to change was the enforcement of the Rules of Court governing the publication of appellate opinions, alleged by appellant to be unconstitutional under various provisions of the federal and state constitutions and violative of Civil Code section 22.2. (Schmier I, supra, 78 Cal.App.4th at pp. 706-707, 93 Cal.Rptr.2d 580.) Appellant's litigation objective, in essence, was the elimination of these rules so that publication would be mandatory for all appellate opinions. (Ibid.) His action did not realize this objective. The rules governing publication have not been deleted or even altered since Schmier I became final, so his litigation did not motivate respondents either to provide the primary relief he sought or to modify their behavior. (Maria P., supra, 43 Cal.3d at pp. 1291-1292, 240 Cal.Rptr. 872, 743 P.2d 932.)

Schmier I Did Not Announce New Law
Appellant contends that he is nevertheless a "successful party" under criteria articulated in Leiserson v. City of San Diego (1988) 202 Cal.App.3d 725, 249 Cal. Rptr. 28 (Leiserson II).
The Leiserson plaintiff was a news photographer arrested while photographing a disaster scene, who, after the criminal charge was dismissed, sued the city under various tort theories. (Leiserson II, supra, 202 Cal.App.3d at p. 730, 249 Cal. Rptr. 28.) The appellate court ultimately determined that he had been properly excluded from the disaster scene, but in so doing it defined, in a published opinion, the rights of the media under Penal Code section 409.5, subdivision (d) to be present at such scenes. (202 Cal.App.3d at p. 730, 249 Cal.Rptr. 28; Leiserson v. City of San Diego (1986) 184 Cal.App.3d 41, 229 Cal. Rptr. 22 (Leiserson I).)
After Leiserson I became final, the plaintiff sought attorney fees under section 1021.5 on the theory that Leiserson I "delineated important media rights protected" by the statute. (Leiserson II, supra, 202 Cal.App.3d at p. 736, 249 Cal.Rptr. 28.) Leiserson II concluded that the plaintiff was not a "successful" party because he failed to prevail in any manner within his chosen context. (Id. at p. 738, 249 Cal. Rptr. 28.)
Before reaching this conclusion, Leiserson II acknowledged that a published opinion that clarifies and/or expands the law is probative of whether the fee claimant has satisfied the substantial benefit concept underlying section 1021.5. (Leiserson II, supra, 202 Cal.App.3d at p. 737, 249 Cal. Rptr. 28.) Leiserson II also acknowledged that "if that opinion is published because it *502 satisfies the criteria for publication under rule 976 et seq ...., such status is also probative of whether the decision clearly vindicates a right where the reason for publication was to announce a rule not found in previously published opinions. [Citation.]" (202 Cal.App.3d at p. 737, 249 Cal.Rptr. 28.) It further acknowledged that litigants can be deemed successful if their actions "spur enforcement of an important public right and an enunciation of the governing rule of law precisely delineating its breadth, even though [the litigants] obtain no money damages or other requested relief." (Id. at p. 733, 249 Cal. Rptr. 28.)
Relying on this language of Leiserson II, appellant argues he is entitled to fees because, as a result of Sehmier I, the publication of opinions which enunciate new rules of law is now mandatory, whereas it was previously discretionary. He correctly observes that rule 976(b), which states in relevant part that "[n]o opinion" of the Court of Appeal "may be published ... unless the opinion [inter alia] [¶] (1) establishes a new rule of law ...," affords appellate courts discretion to publish those opinions stating new rules of law. However, rule 976(b) imposes no requirement that reviewing courts do so.
According to appellant, the Court of Appeal in Sehmier I construed this rule to impose a mandatory standard of publication in such cases. Appellant focuses specifically on the opinion's discussion of how the rules protect litigants against selective prospectivity, the constitutionally proscribed method of judicial decision making under which certain newly pronounced rules are not retroactive.[4] In Schmier I, we said: "[The rules] establish comprehensive standards for determining publication of Court of Appeal cases, particularly specifying that an opinion announcing a new rule of law or modifying an existing rule be published." (Schmier I, supra, 78 Cal.App.4th at pp. 710-711, 93 Cal.Rptr.2d 580.)
As we have noted, the decision whether an award of private attorney general fees is warranted lies initially with the trial court. Nevertheless when ascertaining "successful party" status under section 1021.5, this court is equally well positioned to determine if its earlier opinion vindicated an important right affecting the public interest and yielded a significant benefit. (Los Angeles Police Protective League v. City of Los Angeles (1986) 188 Cal.App.3d I, 8, 232 Cal.Rptr. 697; see also Leiserson II, supra, 202 Cal.App.3d at p. 737, 249 Cal.Rptr. 28; Bouvia v. County of Los Angeles (1987) 195 Cal.App.3d 1075, 1083, fn. 7, 241 Cal.Rptr. 239.)
Contrary to appellant's assertion, Sehmier I did not establish new law. We simply recognized the directive of Beam, supra, 501 U.S at pages 534-537, 111 S.Ct. 2439 that publication is constitutionally required in a narrow range of cases to avoid selective prospectivity, and we then observed that the rules at issue are structured in a way that allows compliance with Beam's directive in such circumstances. (Schmier I, 78 Cal.App.4th at pp. 710-711, 93 Cal.Rptr.2d 580.) In other words, Schmier I was simply an explication of how the publication rules comport with the *503 applicable constitutional requirements. As the trial court aptly observed in denying appellant's request for fees, "What you have [in Schmier I] is ... basically a holding that the publication rules that are used by the courts are effective. [¶] I think ... some[one] reading the opinion, would say: Good Heavens. If the Court of Appeal[] thought this was some new rule that was being pronounced, it is an odd way for [the Court of Appeal] to do it ..."
It is doubtless the intent of the Courts of Appeal that all opinions construing a statute (or rule) so as to uphold the statute's constitutionality will confer a significant benefit on the public by removing any doubt about the statute's constitutionality. However, the claimant of an attorney fee award under section 1021.5 must satisfy not only section 1021.5's public benefit requirement but also its requirement of enforcement (or vindication) of an important right affecting the public interest. (See Press v. Lucky Stores, Inc. (1983) 34 Cal.3d 311, 318, 193 Cal.Rptr. 900, 667 P.2d 704.) Schmier I did not result in the enforcement of important rights affecting due process or equal protection because, insofar as the publication rules pass constitutional muster by comporting with Beam, the right against selective prospectivity needed no enforcing.

Issues Raised in Reply Brief
Appellant contends for the first time in his reply brief that Schmier I conferred a significant public benefit because it recognized that unpublished opinions may be cited and discussed "as persuasive authority," and it precipitated a change in court procedures concerning dissemination of opinions. Issues raised for the first time in a reply brief need not be addressed on appeal. (American Drug Stores, Inc. v. Stroh (1992) 10 Cal.App.4th 1446, 1453, 13 Cal.Rptr.2d 432.) In any case, appellant's contentions have no merit.

a. Persuasive Authority
Appellant relies particularly on language in Schmier I stating that opinions not published in the Official Reports "means nothing more than that they cannot be cited as precedent by other litigants who are not parties thereto." (Schmier I, 78 Cal.App.4th at p. 712, 93 Cal.Rptr.2d 580, italics added.) Appellant would draw from this sentence a holding that the advisory "Not for Publication" means opinions so labeled may be cited as "persuasive authority," even if they cannot be cited as "precedent."
Schmier I, read in context with rule 977, does not allow such a strained inference. We recognize that there is a distinction between "binding" and "persuasive" precedent: the former must be followed, but the latter need not be. (See Black's Law Diet. (7th ed.1999) p. 1195, col. 2; Garner, Diet, of Modern Legal Usage (2d ed.1995) pp. 680-681.) However, "authority" is an integral element of the general definition of "precedent" when there is no qualifying adjective: "`In law a precedent is an adjudged case or decision of a court of justice, considered as furnishing ... authority for the determination of an identical or similar case afterwards arising, or of a similar question of law. The only theory on which it is possible for one decision to be an authority for another is that the facts are alike, or, if the facts are different, that the principle which governed the first case is applicable to the variant facts.' [Citation.]" (Black's Law Diet., supra, italics added.) In prohibiting courts and parties from citing or relying on opinions not certified for publication, except in the limited circumstance when the nonpublished opinion has a particular historical relationship *504 to a subsequent case, rule 977 does not distinguish between binding and persuasive precedent. Therefore, "precedent," as used in the subject sentence (Schmier I, supra, 78 Cal.App.4th at p. 712, 93 Cal. Rptr.2d 580), had no meaning other than its customarily understood meaning that encompasses unmodified "authority." From our simple statement describing what the nonpublication advisory proscribes, one should not infer an unstated new meaning to conjure up an imagined public benefit. Our statement simply employed one term in place of a synonym.

b. Catalyst
Appellant's claim that Schmier I precipitated a change in court procedures concerning dissemination and availability of unpublished opinions is not demonstrated in the record. He appears to assert that as a consequence of his litigation, all unpublished opinions are now available electronically. At oral argument, he attempted to equate electronic availability with "publication" as the term is used in rule 976. We perhaps state the obvious in observing that opinions available electronically, but designated "not for publication" are not synonymous with "publication" under rule 976.
None of the documents to which appellant refers, some of which are not even in the record, support his catalyst theory. They do not establish that respondents were prompted or inspired or persuaded to arrange for electronic access to all opinions because of his litigation.

Relief Sought
Finally, we note that the relief sought by the claimant is probative of the claimant's entitlement to fees. (Leiserson II, supra, 202 Cal.App.3d at p. 738, 249 Cal.Rptr. 28.) The primary relief sought by appellant was not the clarification and/or expansion of the publication rules, but their eradication. Given his goal, an opinion that reinforced the publication standards articulated in the rules does not warrant fees.

Conclusion
Appellant cannot, as a practical matter, be deemed a successful party under section 1021.5. He did not obtain the relief he sought, and he has not demonstrated that his efforts in Schmier I contributed significantly to the conferral of an actual benefit. (Maria P., supra, 43 Cal.3d at pp. 1291-1292, 240 Cal.Rptr. 872, 743 P.2d 932; Folsom v. Butte County Assn. of Governments, supra, 32 Cal.3d at p. 685, 186 Cal.Rptr. 589, 652 P.2d 437.) Therefore, the trial court did not abuse its discretion in denying him attorney fees.

DISPOSITION
The order is affirmed. Costs to respondents.
We concur: STEVENS and SIMONS, JJ.
NOTES
[1] All further section references are to the Code of Civil Procedure.
[2] Unless otherwise indicated, all further rule references are to the California Rules of Court.
[3] For purposes of this appeal, "appellate opinions" refers to opinions of the Court of Appeal in appeals from lower court judgments or orders and in original proceedings such as petitions for extraordinary relief. The term does not refer to opinions or other rulings of the Supreme Court.
[4] Selective prospectivity "occurs when a court expressly overrules a decisional precedent, but applies the new rule only to the case in which the new rule is announced, returning to the old rule with respect to all other cases arising on facts predating the pronouncement of the new rule." (Schmier I, 78 Cal.App.4th at p. 710, citing James B. Beam Distilling Co. v. Georgia (1991) 501 U.S. 529, 534-537, 111 S.Ct. 2439, 115 L.Ed.2d 481 (Beam ).) This method of overruling precedent can violate the constitutional guarantees of due process and equal protection.