Filed 7/23/13  Lopez v. Alevizos CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| MARIA ELENA LOPEZ et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>PETER ALEVIZOS et al.,<br><br>    Defendants and Appellants. | A135641<br><br>(Alameda County<br>Super. Ct. No. RG11 608535) |

A landlord appeals from an order denying a special motion to strike a retaliatory eviction cause of action in the complaint of former tenants as a strategic lawsuit against public participation (SLAPP) under Code of Civil Procedure section 425.16,[1] the anti-SLAPP statute.  The landlord contends that although the trial court correctly determined that the anti-SLAPP statute applied to the challenged cause of action, the court erred in concluding that the tenants established a probability of prevailing on the merits.  We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A.    *Tenancy and Unlawful Detainer Proceedings*

Peter Alevizos and Kathleen Alevizos are the owners of an apartment building located in Walnut Creek; the building is managed by Ramin Moosa and Tatiana DaMatta.  We shall refer to the owners and the managers collectively as defendants and individually where appropriate.

---

[1]    All undesignated statutory references are to the Code of Civil Procedure.

1

Ana Lopez, her sister, Maria Lopez, and Ana's teenage daughter (plaintiffs) were tenants in the building from December 2004 to December 2011.[2] Plaintiffs claim that throughout the tenancy, the sliding glass door in the master bedroom leaked and accumulated mold. On August 17, 2011, plaintiffs complained about a leak in the bedroom. Defendants investigated and found that the carpet in the bedroom was wet. They hired a plumber, removed the furnishings from the room, and pulled up the saturated carpet. The plumber advised that the cause of the leak was not apparent, and that the apartment would have to be vacated for the investigation and repair to proceed. Defendants allegedly attempted to negotiate with plaintiffs about relocating them either temporarily or permanently. On September 24, 2011, after the negotiation efforts failed, defendants served plaintiffs with a three-day notice to quit on the grounds that they were creating a nuisance and committing waste.

When plaintiffs failed to comply with the three-day notice, defendants filed an unlawful detainer action against them on October 26, 2011. That action was set for trial on December 16, 2011. Plaintiffs ultimately vacated the premises on December 15, 2011. As possession was no longer an issue, defendants dismissed the unlawful detainer action on December 16, 2011.

## B.    *The Present Action*

### 1.    *Plaintiffs' Civil Action*

Plaintiffs filed a 10-cause-of-action complaint on December 12, 2011, four days before the unlawful detainer action was set for trial. In it, their principal charging allegations were that defendants were negligent in the management of the subject property, failed to provide habitable premises, and breached related covenants regarding the condition of the subject premises. Plaintiffs further alleged a pattern and practice of defendants of failing to maintain the subject property and of evicting tenants who make habitability complaints. Plaintiffs also alleged a pattern of illegal housing discrimination against the Latino residents of the subject property.

---

[2]    According to plaintiffs, Maria Lopez, though a signatory on the lease, did not reside at the premises.

As noted, plaintiffs alleged ten causes of action for, respectively, negligence, breach of the covenant of quiet enjoyment, breach of the implied warranty of habitability (contract), tortious breach of the implied warranty of habitability, unfair business practices, retaliatory eviction (statutory and common law), private nuisance, fraud, intentional infliction of emotional distress, and invasion of privacy.

### 2.    *Defendants' Anti-SLAPP Motion*

Defendants filed a motion to strike the sixth cause of action for retaliatory eviction under section 425.16.[3]  In their motion, defendants contended: (1)  the retaliatory eviction cause of action was a SLAPP arising from protected activity and, thus, the anti-SLAPP statute applied to the challenged activities, and (2) plaintiffs could not show a probability of prevailing on their claims, in part because they were barred by the litigation privilege. After briefing and argument, the trial court issued an order denying defendants' motion, finding that although the anti-SLAPP statute applied to the challenged cause of action, plaintiffs established a probability of succeeding "on at least part of their claim" for retaliatory eviction.  In so ruling, the trial court explained that the retaliatory eviction cause of action "does not appear to be based solely on the service of eviction notices and the filing of the unlawful detainer action.  Rather, it appears to also be based on an allegation that, after [p]laintiffs complained about the habitability (or " 'tenantability' ") of their rented dwelling, [d]efendants retaliated against them by causing them to vacate the premises involuntarily, under the pretense that [d]efendants intended to repair the premises."

---

[3]      Section 425.16, subdivision (b)(1) provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

3

## II. DISCUSSION

### A. *Applicable Law and Standard of Review*

"A SLAPP suit—a strategic lawsuit against public participation—seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances. [Citation.] The Legislature enacted . . . section 425.16—known as the anti-SLAPP statute—to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights. [Citation.]" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055-1056.)

A court's consideration of an anti-SLAPP motion involves a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)

In order to establish a probability of prevailing on the claim, "the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.]" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821, superseded by statute on other grounds as stated in *Hutton v. Hafif* (2007) 150 Cal.App.4th 527, 547.) "Thus, plaintiffs' burden as to the second prong of the anti-SLAPP test is akin to that of a party opposing a motion for summary judgment." (*Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 768 (*Navellier II*).)

We review the trial court's decision to grant or deny an anti-SLAPP motion de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.) In doing so, we consider " 'the pleadings, and supporting and opposing affidavits . . . [stating the facts] upon which the liability or defense is based.' (§ 425.16, subd. (b)(2).) However, we neither "weigh

4

credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." [Citation.]' [Citation.]" (*Flatley v. Mauro, supra,* 39 Cal.4th at p. 326.)

## B.     *Protected Activity*

In analyzing a defendant's burden under the first prong of the anti-SLAPP analysis, "the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity. [Citations.]" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier I*).) "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Navellier I, supra,* 29 Cal.4th at p. 92.)

"The prosecution of an unlawful detainer action indisputably is protected activity within the meaning of section 425.16. [Citations.] 'The constitutional right to petition . . . includes the basic act of filing litigation or otherwise seeking administrative action.' [Citations.]" (*Birkner v. Lam* (2007) 156 Cal.App.4th 275, 281 (*Birkner*).) In this case, defendants attempted to terminate plaintiffs' tenancy on various occasions, ultimately issuing a three-day notice and filing an unlawful detainer action.

As a general matter, "[t]erminating a tenancy or removing a property from the rental market are not activities taken in furtherance of the constitutional rights of petition or free speech." (*Marlin v. Aimco Venezia, LLC* (2007) 154 Cal.App.4th 154, 161 (*Marlin*).) Nevertheless, a notice terminating a tenancy qualifies as protected speech or petitioning activity if it is a "legal prerequisite for bringing an unlawful detainer action," in which case the notice constitutes "activity in furtherance of the constitutionally protected right to petition. [Citation.]" (*Birkner, supra,* 156 Cal.App.4th at p. 282.) Here, no one disputes that service of a termination notice was required before defendants

could file an unlawful detainer action against plaintiffs.[4]  Rather, what is in dispute is whether the allegations in the complaint relating to those activities are central to plaintiffs' retaliatory eviction cause of action or merely incidental and tangential to the gravamen of the complaint.

In cases where the wrongful acts alleged involve both protected and unprotected activity, " 'the cause of action will be subject to section 425.16 unless the protected conduct is "merely incidental" to the unprotected conduct.' " (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 672 (*Peregrine*).) "As one court explained, 'if the allegations of protected activity are only incidental to a cause of action based essentially on nonprotected activity, the mere mention of the protected activity does not subject the cause of action to an anti-SLAPP motion. [Citation.]' [Citation.]"  But if the allegations concerning protected activity are more than 'merely incidental' or 'collateral,' the cause of action is subject to a motion to strike." (*Ibid.*)  Recognizing that the lines drawn in such cases are fine ones, the " 'focus' of the [anti-SLAPP] statute 'is not the form of plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability . . . .' [Citations.]" (*Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1483.)  Where, for example, the essence or gravamen of a plaintiff's claim is breach of duty of care or of loyalty, "this conclusion does not obviate the need to examine the specific acts of wrongdoing [the] plaintiffs allege regarding [the defendants'] conduct . . . ." (*Peregrine, supra,* 133 Cal.App.4th at p. 671.)  "As the Supreme Court has explained, . . . a court considering a special motion to strike must examine the allegedly wrongful conduct itself, without particular heed to the form of action within which it has been framed. [Citations.]" (*Ibid.*)

---

[4]  Although plaintiffs have not filed a cross-appeal, they argue that the trial court erroneously determined that their action was based solely on the three-day notice and unlawful detainer action.  Plaintiffs contend, however, that this error is harmless because the trial court correctly determined that plaintiffs had established a likelihood of prevailing on the merits of their claim.

Plaintiffs allege that defendants violated Civil Code section 1942.5 by retaliating against them for "exercis[ing] their legal rights as tenants by requesting repairs to their unit." It is not clear from this allegation whether plaintiffs seek recovery under subdivision (a) of Civil Code section 1942.5, or subdivision (c) of the statute, or both. Subdivision (a) of Civil Code section 1942.5 precludes a lessor from recovering possession of a dwelling, causing the lessee to quit involuntarily, increasing rent, or decreasing services within 180 days of certain complaints or actions the tenant takes in regard to the tenantability of the dwelling, if the lessor's actions are retaliatory. Subdivision (c) of Civil Code section 1942.5 provides: "It is unlawful for a lessor to increase rent, decrease services, cause a lessee to quit involuntarily, bring an action to recover possession, or threaten to do any of those acts, for the purpose of retaliating against the lessee because he or she has lawfully organized or participated in a lessees' association or an organization advocating lessees' rights or has lawfully and peaceably exercised any rights under the law. . . ."

The sixth cause of action for retaliatory eviction alleged that after plaintiffs "exercised their legal rights as tenants by requesting repairs and reporting substandard conditions," defendants "engaged in a course of conduct designed to cause" plaintiffs to leave the premises The alleged retaliatory conduct included: (1) "unfounded allegations" that plaintiffs "caused waste" to the premises, (2) unannounced and/or . . . excessive entries, for pretextual purposes," (3) refusals to make timely and adequate repairs; (4) repeated demands that plaintiffs "vacate" the premises "immediately," (5) acts "breach[ing]" plaintiffs' "quiet enjoyment of their home," and (6) service of "demands to vacate and eviction notices."

The sixth cause of action also incorporated by reference the allegations contained in paragraphs 1 through 39. The actions alleged in those paragraphs as comprising defendants' "course of conduct," included the following. In August 2011, the floor of the master bedroom became completely saturated with water, damaging plaintiffs' personal property. Defendants represented that they intended to repair the premises and that plaintiffs needed to immediately vacate, on one day's notice. This occurred

7

many times, the first such time was on August 19, 2011, when defendants told plaintiffs they must vacate by August 20, 2011. Defendants told plaintiffs they must immediately vacate "long before they ever had a licensed contractor enter the unit to actually assess the scope of repair, or determine if vacancy would be required, and if so, for how long." Additionally, defendants made this representation "long before they ever had a permit, or an executed repair contract from a licensed contractor." Thereafter, defendants hired a plumber to " 'inspect'" the premises, and who opined that plaintiffs "had too much clutter and would need to vacate." Defendants represented that they intended to repair the premises and would invite plaintiffs to return thereafter. However, in or about August 2011, property manager Moosa told plaintiffs that the owners did not want them to ever move back to the premises. Moosa added that possibly after one year, they might allow reoccupancy in another unit, if one was vacant, but reiterated that the owners did not want or intend that plaintiffs ever return to the subject unit following repair. Several days later, plaintiffs met with DaMatta, Moosa's supervisor. DaMatta reiterated that the owners did not want or intend that plaintiffs ever return to the premises following repair. The complaint further alleged that defendant "made multiple entries" into plaintiffs' unit "without permission or consent throughout the tenancy." Specifically, "[b]etween August 15-22," plaintiff Ana Lopez returned home to find that defendants' "agents had entered [her unit] without permission or consent and [they] had removed her bedroom furniture and carpet." Then, on September 8, 2011, defendants and "their contractor, a plumber, entered into [plaintiffs'] unit without permission . . . while [Ana Lopez] was at work . . . ." According to the complaint, "[t]he plumber did not make any repairs, and to this day, [defendants] have not produced an executed repair contract, obtained any permit for the work they allegedly plan to do, or actually conducted any repairs."

In her declaration in opposition to defendants' anti-SLAPP motion, plaintiff Ana Lopez averred that after her August 2011 complaint about the water leaks in her bedroom, defendants told plaintiffs that they must "immediately vacate," with one

8

day's notice. Lopez stated that the requests to vacate occurred "many times" after her initial complaint, the first occurring on August 19, 2011, when plaintiffs were told to vacate by August 20, 2011. Lopez further stated that defendants made "multiple entries" into her unit "without permission or consent." Between August 15 and August 22, 2011, Lopez "returned home to find that [d]efendants['] agents had entered the unit without [her] permission or consent and had removed [her] bedroom furnishings and carpet, piling them in the living room." On or about August 29, 2011, Lopez caused a complaint to be lodged with the City of Walnut Creek, which resulted in an inspection of the unit on or about August 30, 2011.

Some of these acts clearly constitute protected activity under the anti-SLAPP statute. As we have explained *ante,* service of the three-day notice and the filing of the unlawful detainer action comprise petitioning activity under section 425.16, subdivision (e). (*Birkner, supra,* 156 Cal.App.4th at pp. 281–283; *Feldman, supra,* 160 Cal.App.4th at pp. 1479–1480.) However, other acts on which plaintiffs based their sixth cause of action might *not* constitute protected petitioning activity under the anti-SLAPP statute. For example, the representations by Moosa and DaMatta that the owners did not want plaintiffs to return to the premises after the repairs had been made might constitute a threat to evict or to cause them to terminate their tenancy involuntarily under Civil Code section 1942.5, but it would not be protected under subdivision (e) of section 425.16, because it was not made in connection with any judicial or administrative proceeding. We also question whether defendants' alleged unauthorized entries into plaintiffs' unit and failure to make the needed repairs would be covered by the anti-SLAPP statute. These actions were not made in connection with any judicial or administrative proceeding and do not constitute statements in connection with a public issue or an issue of truly public interest (a matter we need not and do not decide here). The point is that, because the sixth cause of action is based on *some* acts other than the three-day notice and unlawful detainer proceedings, it is based on both protected activity and unprotected activity.

9

Where a cause of action is based on both protected activity and unprotected activity, it is subject to section 425.16 " ' "unless the protected conduct is 'merely incidental' to the unprotected conduct." ' " (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th at 1539, 1551 (*Haight Ashbury*); *Peregrine, supra,* 133 Cal.App.4th at pp. 672–673 [first prong of anti-SLAPP analysis met where the allegations of loss resulting from protected activity were not merely incidental or collateral to unprotected activity].)

The protected conduct alleged in the sixth cause of action is not merely incidental to the alleged unprotected conduct. "The three-day notice and unlawful detainer are two of the acts on which liability is premised, and those acts are certainly not collateral to a cause of action that seeks relief for causing a lessee to quit involuntarily or bringing an action to recover possession." (*Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1187.) Accordingly, defendants satisfied the first prong of the anti-SLAPP analysis as to the sixth cause of action. (*Haight Ashbury, supra,* 184 Cal.App.4th at p. 1551, fn. 7 ["where the defendant shows that the gravamen of a cause of action is based on nonincidental protected activity as well as nonprotected activity, it has satisfied the first prong of the [anti-]SLAPP analysis"]; *Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1287 [mixed causes of action are subject to a special motion to strike under section 425.16 if "at least one of the underlying acts is protected conduct"].)

## C. *Probability of Prevailing*

We turn to the second prong of the determination required by the anti-SLAPP statute—whether plaintiffs have met their burden to demonstrate a probability of prevailing on the merits. (*Navellier I, supra,* 29 Cal.4th at p. 88; *Cohen v. Brown* (2009) 173 Cal.App.4th 302, 315.) In order to establish the requisite probability of prevailing, a plaintiff must " 'state[ ] and substantiate [ ] a legally sufficient claim.' " (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 741.) To do so, the plaintiff must make a sufficient prima facie showing of facts to sustain a favorable judgment if the plaintiff's evidence is credited. (*Ibid.; Drummond v. Desmarais* (2009) 176 Cal.App.4th 439, 449.)

### 1. Plaintiffs Must Show a Probability of Prevailing on Any Part of the Challenged Cause of Action

Under the second step of the anti-SLAPP analysis, if a plaintiff " 'can show a probability of prevailing on *any part of its claim,* the cause of action is not meritless' and will not be stricken; 'once a plaintiff shows a probability of prevailing on any part of its claim, the plaintiff *has established* that its cause of action has some merit and the entire cause of action stands.' " (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820 (*Oasis*), quoting *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 106 (*Mann*).)

Defendants criticize the above rule (which was first announced by the appellate court in *Mann* ). Defendants argue this court should reject *Mann.* In *Oasis,* however, our Supreme Court cited *Mann* with approval, albeit in a case that apparently did not involve a mixed cause of action, and adopted its approach to the second step of the anti-SLAPP analysis. (*Oasis, supra,* 51 Cal.4th at pp. 820–821; see also *Wallace, supra,* 196 Cal.App.4th at p. 1196.)

In *Wallace, supra,* 196 Cal.App.4th 1169, our colleagues in Division Five of this court questioned the wisdom of the *Mann* rule, arguing it permits a plaintiff to shield meritless allegations of protected activity by combining them in a single count with meritorious allegations of unprotected activity. (See *Wallace, supra,* 196 Cal.App.4th at pp. 1195–1212; but see *id.* at pp. 1216–1220 (conc. opn. of Jones, P. J.) [disagreeing with majority's criticism of *Mann*].) The *Wallace* majority argued a plaintiff instead should have to show a probability it would prevail based solely on its allegations of protected activity. (*Id.* at p. 1210.) The *Wallace* majority stated this result would be consistent with the statutory language, legislative history, public policy, and *Taus v. Loftus* (2007) 40 Cal.4th 683 (*Taus*), in which the Supreme Court, in the anti-SLAPP context, separately examined the merit of individual acts or bases of liability that were combined in larger causes of action. (See *Wallace, supra,* 196 Cal.App.4th at pp. 1208–1210, citing *Taus, supra,* 40 Cal.4th at pp. 711–712, 714–715, 742–743.)

The *Wallace* majority acknowledged, however, that in *Oasis* (decided after *Taus*), the Supreme Court cited *Mann* with approval and held a cause of action based on protected activity may proceed if the plaintiff shows a probability of prevailing on at least one of the asserted bases for liability. (*Wallace, supra,* 196 Cal.App.4th at pp. 1210-1211, citing *Oasis, supra,* 51 Cal.4th at pp. 820–821.) Ultimately, the *Wallace* court, acknowledging the implicit overruling of *Taus*, followed the rule pronounced by the Supreme Court, noting that "*Oasis* clearly holds that, where a cause of action (count) is based on protected activity, the entire cause of action may proceed as long as the plaintiff shows a probability of prevailing on at least *one* of the asserted bases for liability." (*Wallace, supra,* 196 Cal.App.4th at p. 1211-1212.) So too here, we apply the *Mann* approach adopted by the Supreme Court in *Oasis*.[5]

2.       *Plaintiffs Have Satisfied Their Burden*

With respect to the merits of their retaliation claim, the question is whether plaintiffs showed by admissible evidence, any probability they would prevail under Civil Code section 1942.5. (*Wallace, supra,* 196 Cal.App.4th at p. 1214.) Civil Code section 1942.5, subdivision (c), declares it to be "unlawful for a lessor to increase rent, decrease services, cause a lessee to quit involuntarily, bring an action to recover possession, or threaten to do any of those acts, for the purpose of retaliating against the lessee because he or she has . . . lawfully and peaceably exercised any rights under the law." A lessor who engages in such retaliation is liable for the injured tenant's damages. (Civ.Code, § 1942.5, subd. (f).)

A tenant alleging retaliatory eviction must prove the landlord retaliated because the tenant exercised a legal right. (*Western Land Office, Inc. v. Cervantes* (1985) 175 Cal.App.3d 724, 739.) Typically, the claim arises as a defense to an unlawful detainer or

---

[5]      We decline defendants' invitation to follow *City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, and express no opinion regarding the approach adopted therein. (See *id.* at pp. 772-773 [concluding allegations regarding protected activity "may be parsed from the causes of action and stricken, while the allegations related to nonprotected activity may remain as part of the complaint"].)

other eviction proceeding, but, as here, the landlord's retaliatory motive can also form the basis of a tenant's affirmative cause of action for damages. (*Id.* at pp. 736-737; Civ.Code, § 1942.5, subd. (c).)

As defendants correctly note, service of the three-day notice and filing an unlawful detainer action are subject to the litigation privilege in Civil Code section 47, subdivision (b). (*Wallace, supra,* 196 Cal.App.4th at pp. 1214-1215.) And, thus, as a matter of law, defendants could not be liable under Civil Code section 1942.5 on the basis of those acts. (*Wallace, supra,* 196 Cal.App.4th at p. 1215.) Nevertheless, plaintiffs contend that they established their prima facie case of liability for the sixth cause of action, separate and apart from evidence of the filing the unlawful detainer action or the eviction notices. We agree. The allegations in the complaint and supporting declarations demonstrate that defendants took actions and made statements that were independent of the actual eviction litigation. Specifically, plaintiffs allege that defendants refused to make adequate and timely repairs to their unit. And, after requesting the repairs and complaining about the substandard conditions, defendants engaged in a "course of conduct" designed to cause plaintiffs to quit the premises. The alleged course of conduct included "unannounced and/or unreasonable and excessive entries, for pretextual purposes . . . ."

Defendants argue that the alleged unwarranted entries in plaintiffs' unit were irrelevant because they are not among the enumerated acts proscribed by Civil Code section 1942.5. That unwarranted entries are not specifically listed in the retaliatory eviction statute is of no moment. The statute explicitly proscribes acts that "cause a lessee to quit involuntarily" the premises. (Civ. Code, § 1942.5, subd. (c).) Here, plaintiffs allege that defendants by their unannounced and/or unreasonable and excessive entries engaged in a course of conduct designed to cause plaintiffs to involuntarily quit the premises.

Equally unpersuasive is defendants' claim that the retaliatory eviction statute does not apply to the challenged conduct because pursuant to Civil Code section 1954 they had a legal right to enter the unit. (See Civ. Code, § 1942.5, subd. (d) ["Nothing in this

13

section shall be construed as limiting in any way the exercise by the lessor of his or her rights under any lease or agreement or any law pertaining to the hiring of property or his or her right to do any of the acts described in subdivision (a) or (c) for any lawful cause. Any waiver by a lessee of his or her rights under this section is void as contrary to public policy"].)  Civil Code section 1954, subdivision (a) enumerates the instances in which a landlord may enter a unit, which, as relevant here, includes entry to make necessary repairs.  However, subdivision (c) of that section expressly provides that a "landlord may not abuse the right of access or use it to harass the tenant."  Here, the complaint alleges that defendants abused their right of access and used it to harass plaintiffs.  Plaintiffs submitted evidence that, if credited, supports this claim.[6]

Consequently, the plaintiffs made a prima facie showing that they were likely to succeed on their retaliatory eviction cause of action.  The trial court did not err in denying the special motion to strike.

### III. DISPOSITION

The judgment is affirmed.  Plaintiffs are entitled to their costs on appeal.[7]

---

[6]    To the extent defendants belatedly challenge the trial court's exclusion of certain defense evidence, this claim is not properly before us, as it does not appear to have been made in the trial court and was raised for the first time on appeal in defendants' reply brief. (See *Cabrini Villas Homeowners Assn. v. Haghverdian* (2003) 111 Cal.App.4th 683, 693 (reviewing court ordinarily will not consider challenge to ruling if  objection could have been but was not made in trial court); *Schmier v. Supreme Court* (2002) 96 Cal.App.4th 873, 881 (issues raised for the first time in reply brief need not be addressed on appeal).)

[7]    Plaintiffs' objection to the trial court's order denying their request for sanctions is not properly before us.  They did not file a notice of appeal, challenging the trial court's order; nor did they file a protective cross-appeal.  If plaintiffs wished to assign error to the trial court's denial of an award of sanctions, they were obliged to file an appeal.  "[A] party who has not appealed may not complain of errors." (*Phillips v. Phillips* (1953) 41 Cal.2d 869, 875; *Kardly v. State Farm Mut. Auto Ins. Co.* (1995) 31 Cal.App.4th 1746, 1748-1749, fn. 1.)  Without a timely cross-appeal, we lack jurisdiction to consider plaintiffs' claim of trial court error.  (*In re Marriage of Shupe* (1983) 139 Cal.App.3d 1026, 1036.)

14

_____
REARDON, J.

We concur:


_____
RUVOLO, P. J.


_____
RIVERA, J.