[No. B158198. Second Dist., Div. Eight. Aug. 4, 2003.]

CABRINI VILLAS HOMEOWNERS ASSOCIATION, Plaintiff and Respondent, v.
SONIA HAGHVERDIAN, Defendant and Appellant.

## Counsel

Lightfoot & Northup, Robert W. Northup, Jr., and Stephen K. Lightfoot for Defendant and Appellant.

Maxie Rheinheimer Stephens & Vrevich, Darin L. Wessel and Nick M. Campbell for Plaintiff and Respondent.

## Opinion

**RUBIN, J.**—Defendant and appellant Sonia Haghverdian appeals from the issuance of an injunction requiring her to remove a room air-conditioning unit she installed in an exterior wall of her condominium without prior approval from plaintiff and respondent Cabrini Villas Homeowners Association (the association or respondent). Appellant contends: (1) the injunction must be reversed because respondent did not serve her with a "Request for Resolution," a condition precedent to bringing an action for injunction pursuant to Civil Code section 1354 (section 1354); (2) the architectural control provisions of the CC&R's were not enforceable equitable servitudes under section 1354; and (3) the trial court "improperly rejected important evidence with respect to balancing the hardships." After review, we affirm the order.

### FACTUAL AND PROCEDURAL BACKGROUND

Cabrini Villas is a common interest development comprised of 863 town homes (units) located on 77 acres in Burbank. It is governed by a condominium plan, a declaration of covenants, conditions and restrictions (CC&R's), supplemental CC&R's, association rules and regulations, and a policy on architectural control. Article VII, section 4 of the CC&R's proscribes homeowners from making any alterations "affecting the structural integrity of the unit without the prior written approval of the Architectural

Committee. Detailed plans and specifications prepared by a qualified person must be submitted with the waiver request form." Article VII, section 5 requires homeowners to obtain the prior written approval of the architectural committee for the "installation of any awnings, sunshades or screen doors, and shall also be required in connection with the construction, erection or placement of any such improvements (including landscaping) upon the Common Area or the Recreation Area." Article VII, section 16 provides that "no ... machines, equipment, or similar objects [or] unsightly objects of any kind shall be allowed on the exterior ... of the buildings ..., nor shall any such objects be allowed to protrude through ... the walls of any building ...."

In 1987, appellant purchased a unit at Cabrini Villas and has lived there ever since. Appellant's residence, like all of the other units in the complex, has central air conditioning. In October 1999, while extensive earthquake repairs were being made to the common areas at Cabrini Villas, appellant decided to hire a contractor to add a bathroom window and install a 20-inch-wide wall-mounted air-conditioning unit through an exterior wall in her unit. Appellant did not obtain prior written approval from the association, its board of directors, or the Architectural Committee.

On December 22, the general manager and the engineer responsible for overseeing the earthquake repairs were at appellant's unit to inspect the new window.[1] It was at this time they first became aware that appellant had installed an air conditioner through the exterior wall of her unit.[2] The engineer and general manager were concerned that the installation of the air conditioner may have compromised the structural integrity of the load-bearing wall and/or the watertightness of the building. That day, the general manager wrote a memorandum to the association's board of directors informing them that appellant had installed an air conditioner through an exterior wall without prior approval.

In February 2000, appellant wrote to the general manager to request a meeting with the board of directors on February 22. At appellant's request, the general manager arranged the meeting at which the entire board, the

[1] On November 17, 1999, after receiving a letter from the association's general manager stating that the window would have to be removed because it was installed without prior approval, appellant submitted a request for retroactive approval to install the two-by-three-foot window. Appellant's request was denied because installation of her window required cutting through a wall stud. When appellant failed to remove the window, the general manager wrote to her a second time. In that letter, dated December 10, he warned appellant she had 72 hours in which to make an appointment with the general manager to "amicably resolve" the matter of the window, or it would be turned over to the association's legal department. Eventually, the matter was resolved.

[2] Appellant maintains this discovery occurred not in December 1999, but in March or April 2000.

general manager and the engineer were in attendance. Appellant understood the purpose of the meeting was for her to tell the board of her concerns regarding the inadequacy of the earthquake repairs being made to her unit. The board understood the purpose of the meeting was to discuss appellant's installation of the window and air conditioner. The subject of the air conditioner was discussed only briefly before the meeting ended abruptly when appellant left after becoming upset that the focus of the meeting was not on her concerns.

The issue of the window appears to have been resolved some time after the February 22 meeting, as evidenced by the fact that subsequent communications with appellant addressed only the air conditioner. In a letter dated March 28, the general manager warned appellant that failure to remove the air conditioner within 15 days would "compel the association to turn this situation over to the attorneys for legal relief." Appellant claims she did not receive this letter.

In written correspondence dated May 23, the general manager invited appellant to discuss the matter of her air conditioner at a meeting of the association's judicial committee on June 21. The letter advised appellant that failure to appear would be "construed as a refusal to amicably settle the issue ...." Appellant claims she did not receive this correspondence, either. She did not appear at the meeting. After considering the issue, the judicial committee concluded the air conditioner must be removed. It recommended that appellant be fined $50 if she failed to remove the air conditioner within 30 days, an additional $100 if she failed to do so within 60 days and an additional $150 if she failed to do so within 90 days. The committee recommended reviewing the matter after 90 days.

Subsequent to the judicial committee meeting, the board of directors unanimously decided to file suit against appellant for violation of the CC&R's. Accordingly, the instant action was filed on July 7, 2000. In pertinent part, the operative first amended complaint alleged causes of action for breach of the CC&R's arising out of, among other things, appellant's installation of an air-conditioning unit to a common area wall without prior written consent; sought declaratory relief regarding the respective rights and duties of appellant and the association under the CC&R's; and sought an injunction compelling appellant to, among other things, remove the air conditioner and repair the affected wall.[3] The trial court overruled appellant's demurrer to the complaint, a demurrer based on the association's alleged failure to file a certificate that the association had complied with alternative dispute resolution (ADR)

---

[3] A cross-complaint appellant filed against the association and the contractor, hired by the association to do the earthquake repairs to her unit, has been settled.

procedures as required by section 1354.[4] The trial court subsequently denied the association's motion for summary judgment/summary adjudication made on the grounds that installation of the air conditioner through a common area exterior wall constituted a breach of the CC&R's.

Trial of the bifurcated injunction portion of the case commenced on January 28, 2002. After hearing the evidence, the trial court issued an injunction requiring appellant to remove the air conditioner and repair the wall within 60 days. The trial court found the association did not selectively enforce the CC&R's against appellant; appellant violated the CC&R's by cutting through an exterior wall of the building in order to install the air conditioner; doing so affected the integrity of the building structure and moisture sealing; appellant did not obtain the requisite waiver from the board of directors or architectural committee to install the air conditioner; appellant knew she was not authorized to cut into the wall in such a way that studs were compromised; appellant received notice of the judicial committee meeting at which the air conditioner was discussed; appellant did not comply with the CC&R's in installing the air conditioner; installation had a significant effect on the structure of the building; and appellant failed to demonstrate that she needed the air conditioner for her health.

Appellant filed a timely notice of appeal.

## DISCUSSION

*Standard of Review*

■ An order granting a permanent injunction is appealable as a final judgment on the merits. (Code Civ. Proc., § 904.1, subd. (a)(6).) It is reviewed on appeal for the sufficiency of the evidence to support the judgment. (*Art Movers, Inc. v. Ni West, Inc.* (1992) 3 Cal.App.4th 640, 646 [4 Cal.Rptr.2d 689], citing 6 Witkin, Cal. Procedure (3d ed. 1985) Provisional Remedies, §§ 250, 251, pp. 216–218.) Generally, in reviewing a permanent injunction, we resolve all factual conflicts and questions of credibility in favor of the prevailing party and indulge all reasonable inferences that support the trial court's order. (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762 [283 Cal.Rptr. 533].) However, where the ultimate facts are undisputed,

---

[4] In opposition to appellant's demurrer, counsel for the association submitted a declaration in which he averred that on May 20, 2000, the law firm sent appellant a letter requesting alternative dispute resolution by regular and certified mail. Counsel further averred that, after appellant failed to respond to the letter within the statutory 30-day time period, the firm filed the instant action. In overruling the demurrer, the trial court found counsel's declaration "appears to satisfy the requirements [of] Civil Code section 1354, as a request for ADR was made and [appellant] failed to respond. See Civil Code section 1354(c)."

whether a permanent injunction should issue becomes a question of law, in which case the appellate court may determine the issue without regard to the conclusion of the trial court. (*Dawson v. East Side Union High School Dist.* (1994) 28 Cal.App.4th 998, 1041 [34 Cal.Rptr.2d 108].)

Here, the parties stipulated to many of the underlying the facts, including that the 20 by 14 inch air conditioner at issue was mounted in a hole cut through an exterior wall of the building, and that appellant did not obtain permission or approval from the association or the architectural committee to install it. They further stipulated that the CC&R's, the association's rules and regulations, and the architectural control policy govern the dispute.

*Appellant Waived the Defect in Service of the Request for ADR*

Appellant contends the trial court lacked subject matter jurisdiction to issue an injunction. As we understand appellant's argument, it is that section 1354 requires a party filing an action to enforce CC&R's to serve personally a request for ADR; failure properly to serve a request for ADR constitutes a failure to submit the dispute to ADR; in turn, that constitutes a failure to exhaust an administrative remedy; and, thus, deprives the court of subject matter jurisdiction.[5] We conclude a request for ADR made pursuant to section 1354 may properly be served by a form of mail providing for a return receipt and that, to the extent appellant did not sign the return receipt, she waived that defect in the service.

In construing a statute, "a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according

---

[5] Section 1354 provides in pertinent part: "(a) The covenants and restrictions in the declaration shall be enforceable equitable servitudes .... [¶] (b) [Except under certain specified conditions not relevant here], prior to the filing of a civil action by either an association or an owner or a member of a common interest development solely for declaratory relief or injunctive relief, or for declaratory relief or injunctive relief in conjunction with a claim for monetary damages ... not in excess of five thousand dollars ($5,000), related to the enforcement of the governing documents, the parties shall endeavor, as provided in this subdivision, to submit their dispute to a form of alternative dispute resolution such as mediation or arbitration. ... Any party to such a dispute may initiate this process by serving on another party to the dispute a Request for Resolution.... Service of the Request for Resolution shall be in the same manner as prescribed for service in a small claims action as provided in Section 116.340 of the Code of Civil Procedure.... [¶] (c) At the time of filing [such an action,] ... the party filing the action shall file with the complaint a certificate stating that alternative dispute resolution has been completed in compliance with subdivision (b). The failure to file a certificate as required by subdivision (b) shall be grounds for a demurrer pursuant to Section 430.10 of the Code of Civil Procedure ... unless the filing party certifies in writing that one of the other parties to the dispute refused alternative dispute resolution prior to the filing of the complaint, that preliminary or temporary injunctive relief is necessary ... or the court finds that dismissal of the action for failure to comply with subdivision (b) would result in substantial prejudice to one of the parties."

significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.] Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.]" (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387 [241 Cal.Rptr. 67, 743 P.2d 1323]; see also *Kobzoff v. Los Angeles County Harbor/UCLA Medical Center* (1998) 19 Cal.4th 851, 860 [80 Cal.Rptr.2d 803, 968 P.2d 514].)

Section 1354, subdivision (b) provides that service of a request for ADR "shall be in the same manner as prescribed for service in a small claims action as provided in Section 116.340 of the Code of Civil Procedure...." Code of Civil Procedure section 116.340 (section 116.340) provides for service of a small claims action by the following methods: "(1) The *clerk* may cause a copy of the claim and order to be mailed to the defendant by any form of mail providing for a return receipt. [¶] (2) The *plaintiff* may cause a copy of the claim and order to be delivered to the defendant in person. [¶] (3) The *plaintiff* may cause service of a copy of the claim and order to be made by substituted service as provided in subdivision (a) or (b) of Section 415.20 without the need to attempt personal service on the defendant ....[6] [¶] (4) The *clerk* may cause a copy of the claim to be mailed, the order to be issued, and a copy of the order to be mailed as provided in subdivision (b) of Section 116.330."[7] (Code Civ. Proc., § 116.340, subd. (a), italics added.) Service in the manner provided by subdivision (a)(1) and (4) is deemed complete on the date the defendant signs the mail return receipt "or as established by other competent evidence, whichever applies to the method of service used." (*Id.*, § 116.340, subd. (c).)

Here, on May 20, counsel for the association sent appellant a letter by regular and certified mail, return receipt requested, in which counsel advised appellant that the installation of the air conditioner violated the CC&R's, and that the association was requesting she participate in ADR under section 1354. At trial, appellant testified she never received the letter either by

---

[6] Code of Civil Procedure section 415.20, subdivision (b) provides that, in lieu of personal service, a complaint may be served by leaving a copy at the person's dwelling in the presence of a competent member of the household and thereafter mailing a copy to the person served at the place where a copy was left.

[7] Pursuant to subdivision (b)(1) and (3) of Code of Civil Procedure section 116.330, the clerk of the small claims court may cause a copy of the plaintiff's claim or an order setting a hearing to be served on the defendant "by any form of mail providing for a return receipt."

regular or certified mail, although she did receive the "little certified sticker in my mailbox under my door."[8]

Two issues are presented by this evidence: First, was it significant that counsel rather than a court clerk served appellant, and second, was appellant's failure to sign the return receipt fatal to the association's compliance with the statute. As to the former, the fact that the certified mail was at the direction of counsel for a party rather than a court clerk, as required by the literal language of section 116.340, is of no consequence considering the interplay between that statute and section 1354. The legislative purpose of section 1354 is to encourage parties in a condominium CC&R's dispute, involving minimal monetary damages, to resolve their differences by ADR. Accordingly, subdivision (b) of section 1354 requires the parties to "endeavor" to submit their dispute to ADR *prior to the filing of the action*. Because no action has yet been filed at the time a request for ADR is required to be served, there is no court clerk involved who could serve the request for ADR in the manner prescribed by section 116.340, subdivision (a)(1) and (4). In establishing the means to serve a request for ADR, however, the Legislature referred to and incorporated section 116.340 in its entirety. It did not, as it could have, specify that only those provisions detailing the manner in which a plaintiff may serve a claim, and not those provisions detailing the manner in which a clerk may do so, were applicable to service of a request for ADR. We recognize that, by allowing a party to effect service under section 116.340, subdivision (a)(1), we necessarily ignore the word "clerk" in the subdivision. However, a contrary construction would require treating as surplusage subdivision (a)(1) and (4) of that statute in their entirety. ■ Given the command that the court should avoid treating any portion of a legislative enactment as surplusage, our interpretation is preferable.[9]

---

[8] Appellant testified she believed the certificate was related to some medical equipment she had ordered. At first, she went to the wrong post office to pick up the letter. When she went to the correct post office, she was told the letter had been returned to its sender one or two days before. Having been told the letter was something legal, she then called the association office and ascertained that the letter was related to legal proceedings being brought against her by the association. Appellant claims she never received a copy of the letter until receiving it from her own attorney during the litigation. However, appellant raised the subject of mediation in a letter to counsel which was apparently written to confirm an extension of time before she made a formal appearance at the litigation. In that letter, dated September 20, 2000, appellant writes: "Thank you very much for giving me 15 days, it will help a lots. [¶] Please, if you could, can you let me know when the new date will be, and for a mediation do I need an attorney. [¶] I would really appreciate your answers to my these [*sic*] two questions." It would be reasonable to infer from this letter that appellant did, in fact, receive the association's May 20, 2000, letter by regular mail if not by certified mail.

[9] Our construction gives greater weight to the notion of "manner" or "method" of service than to the *person* effecting the service. This is consistent with the use of the word "manner" in section 1354.

The legislative history relied upon by appellant supports our conclusion. In amending section 1354, the Legislature decided that merely mailing the request for ADR was insufficient and so included the reference to section 116.340 to provide for a more formal method of service, namely, the return receipt.

Moreover, the reasons service by mail of a small claims court claim is reserved to the court clerk are not applicable to service of a request for ADR. Service of a small claims court action subjects the defendant to the court's jurisdiction. Having obtained jurisdiction over the defendant, the court has the power to enter a judgment against the defendant, with all the attendant legal ramifications. To assure that a defendant in a small claims court action has notice and an opportunity to be heard before such a judgment can be entered, the Legislature has seen fit to require personal or substituted service *if* the service is made by the plaintiff, an interested party, or by mail if accomplished by a neutral party, the clerk. By contrast, a request for ADR merely offers the other party an opportunity to resolve the dispute by ADR, rather than litigation. Failure to receive a request for ADR does not subject the other party to the significant consequences of a failure to receive notice of, and opportunity to be heard in, a judicial action.

For these reasons, we conclude the Legislature intended to allow a party to an action to enforce CC&R's pursuant to section 1354 to serve a request for ADR by the more informal but still reliable method of service—namely service by any form of mail requiring a return receipt—prescribed in section 116.340, subdivision (a)(1) and (4). Accordingly, the association complied with section 1354 when it served the request for ADR in that manner. This, however, does not end our inquiry. The question remains whether service was complete despite the fact appellant did not sign the mail return receipt. (§ 116.340, subd. (c).)

According to subdivision (c) of section 116.340, "Service by the methods described in subdivision (a) shall be deemed complete on the date that the defendant signs the mail return receipt ...."[10] Here, it is undisputed that appellant did not sign the return receipt. Accordingly, service of the ADR request was not complete pursuant to section 1354. However, we find appellant has waived this error by raising it for the first time in her reply brief and failing to raise it in the court below.

---

[10] Section 116.340 is silent as to what remedy a small claims court plaintiff has if the defendant fails to sign the mail return receipt. This is in contrast with Code of Civil Procedure section 415.30 providing for service by mail of a summons and complaint in superior court actions. According to subdivision (d) of section 415.30, a defendant who fails to acknowledge service "shall be liable for reasonable expenses thereafter incurred in serving or attempting to serve the party by another method ...."

" 'An appellate court will not consider procedural defects or erroneous rulings where an objection could have been, but was not, raised in the court below.' [Citation.] It is unfair to the trial judge and to the adverse party to take advantage of an alleged error on appeal where it could easily have been corrected at trial. [Citations.]" (*Children's Hospital & Medical Center v. Bonta´* (2002) 97 Cal.App.4th 740, 776–777 [118 Cal.Rptr.2d 629].)

Here, appellant's demurrer focused entirely on the proposition that respondent failed to file a certificate stating that ADR had been completed or to certify in writing that appellant had refused ADR prior to the filing of the complaint. The association's opposition papers included a declaration from counsel setting forth what the association had done to comply with section 1354, including service by mail with return receipt. Appellant did not raise any defect in the certified mail/return receipt procedure in reply to respondent's opposition to the demurrer. On appeal, her opening brief focused exclusively on the proposition that personal service rather than service by mail was required by section 1354. For the first time in her reply brief, appellant suggests that, assuming service by a form of mail requiring return receipt was proper, service in this case was not complete because appellant never signed the return receipt.

If appellant had raised the objection that service of the ADR request was defective because there was no signed return receipt, the trial court could have sustained the demurrer with leave to amend, in which case respondent could have complied with section 1354 and filed an amended complaint. Even if leave were denied, the association could have properly served a new ADR request and commenced a new action. Alternatively, the trial court would have been in a position to consider the provisions of section 1354, subdivision (c) and overrule the demurrer on that basis. Subdivision (c) authorizes the trial court to ignore noncompliance with section 1354 when "dismissal of the action for failure to comply with subdivision (b) would result in substantial prejudice to one of the parties." The trial court might have exercised its discretion to permit the litigation to go forward. By not raising the lack of a return receipt issue first with the trial court, appellant precluded that court from taking appropriate curative action. (*Children's Hospital & Medical Center v. Bonta´, supra,* 97 Cal.App.4th at pp. 776–777.) Under these circumstances, appellant has waived any error.[11]

---

[11] Having concluded that appellant waived the defect in service of the request for ADR, we need not address that portion of appellant's argument that the failure to comply with section 1354 was tantamount to failing to exhaust an administrative remedy, thus depriving the court of subject matter jurisdiction.

*The Architectural Controls Provisions are Enforceable*

Appellant contends the architectural control provisions should not have been enforced as equitable servitudes under section 1354. As we understand her argument, it is that the association failed to follow its own procedures and policies because the architectural committee did not review the air conditioner to determine whether it was "unsightly"; the board had no information concerning whether installation of the air conditioner lessened the structural integrity of the building; and the association did not exercise its authority in a fair and nondiscriminatory way. We disagree.

"... Generally, courts will uphold decisions made by the governing board of an owners association so long as they represent good faith efforts to further the purposes of the common interest development, are consistent with the development's governing documents, and comply with public policy." (*Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361, 374 [33 Cal.Rptr.2d 63, 878 P.2d 1275] (*Nahrstedt*).)

Appellant is incorrect in her assertion that there was no evidence the architectural committee ever considered appellant's air conditioner. Article VIII, section 1 of the CC&R's provides that the architectural committee "shall be composed of the Board of Directors of the Association or of three (3) or more representatives appointed by the board." The president of the association's five-member board of directors, Gina Phelps, testified that, at the relevant time, the board acted as the architectural review committee and that the matter of appellant's air conditioner was referred to the board acting as the architectural review committee.[12] After discussing it with the general manager, the board concluded installation of the air conditioner constituted a violation of the association's architectural restrictions. Thus, there was evidence that the board, acting in this case as the architectural committee, considered appellant's air conditioner. (*Nahrstedt, supra,* 8 Cal.4th at p. 373.)

The evidence is also contrary to appellant's assertion that the board had no information concerning whether installation of the air conditioner lessened the structural integrity of the building. Because the air conditioner was 20 inches wide and there was evidence that the clear distance between two studs was 14 and one-half inches, it would have been necessary to cut into a stud in order to install appellant's air conditioner. The engineer testified: "[T]o penetrate the opening or to cut an opening into an exterior wall would entail diminishing, although not to a great extent, to some extent, the structural integrity of the lateral load resisting system and, therefore, degrading the

---

[12] Bill Williams, another board member, testified that there was a separate architectural committee. Such a conflict in the evidence does not require reversal. (*Cochran v. Rubens* (1996) 42 Cal.App.4th 481, 486 [49 Cal.Rptr.2d 672].)

quality of the building structure. Again, not to a great extent." The engineer expressed these concerns to the general manager. In a letter to the general manager dated January 12, 2000, the engineer stated the air conditioner was installed "through the balcony exterior wall .... This work was done without ... proper wall penetration detail." The engineer was present at the February 22 meeting at which the subject of the air conditioner was briefly discussed. From this evidence, it can reasonably be inferred that both the general manager and the engineer informed the board of their concerns that installation of the air conditioner diminished the structural integrity and watertightness of the building.

We are also not persuaded by appellant's assertion that the association discriminated against her based upon her disability in violation of the Unruh Civil Rights Act (Civ. Code, § 51) because it "was advised of appellant's health condition and ignored her disability in connection with its attempt to enjoin appellant's conduct." The evidence was to the contrary. The evidence adduced at trial established the condominium had central air conditioning. Appellant installed a wall-mounted air conditioner in a walk-in closet for the purpose of alleviating the heat in that closet, which she believed was having an adverse effect on the things she stored there. The new air conditioner did not affect any of the living areas. There was no evidence that the new air conditioner was in any way ameliorative of appellant's health problems. Thus, there was no evidence from which it could reasonably be inferred that the association's decision to have appellant remove the air conditioner was somehow discriminatory. Accordingly, there was no evidence that the board's decision was violative of public policy. (*Nahrstedt, supra,* 8 Cal.4th at p. 373.)

Finally, we are not persuaded by appellant's assertion that, pursuant to Civil Code section 3422,[13] the association had an adequate remedy at law, such as the imposition of a fine for appellant's violation of the CC&Rs. "One significant factor in the continued popularity of the common interest form of property ownership is the ability of homeowners to enforce restrictive CC&R's against other owners (including future purchasers) of project units. ... [¶] ... [To be enforceable,] restrictions must relate to use, repair, maintenance, or improvement of the property, or to payment of taxes or assessments, and the instrument containing the restrictions must be recorded. [Citation.]" (*Nahrstedt, supra,* 8 Cal.4th at p. 375.) Phelps testified that the board considers maintaining the aesthetic value of the buildings at Cabrini Villas as essential to protecting the financial future of the community. In keeping with this philosophy, the association spent $2 million on applying a

---

[13] Civil Code section 3422 provides that a final injunction may be granted where "pecuniary compensation would not afford adequate relief" or where it would be difficult to ascertain the amount of compensation which would afford adequate relief.

product that made the stucco buildings watertight. Further, to maintain the architectural integrity of the property, the board determines how best to remedy violations of the CC&R's. Before appellant installed her air conditioner, Phelps testified, on two prior occasions residents had been required to remove room air-conditioning units they had installed in windows because such installation was found to be a violation of the CC&R's. This was because the board found these air conditioners to be "unsightly." Regarding appellant's air conditioner, Phelps testified she first saw it in December 1999, after she learned of its existence from the general manager. She was able to see the air conditioner from the common area sidewalk in front of the unit. Upon consideration, the board determined that appellant's air conditioner was unsightly. For this reason, as well as for the reason that the air conditioner had the potential of compromising the structural integrity and watertightness of the building, the board concluded it had to be removed.

█ Under these circumstances, appellant has failed to establish that the imposition of a fine was an adequate remedy at law. A monetary penalty would not cure the unsightliness of the air conditioner, nor would it bolster the structural integrity or watertightness of the building.

Appellant's reliance on *Ironwood Owners Assn. IX v. Solomon* (1986) 178 Cal.App.3d 766 [224 Cal.Rptr. 18] for a contrary result is misplaced. In that case, the appellate court reversed summary judgment granting an injunction compelling homeowners in a planned development community to remove trees from their property which were placed in violation of the CC&R's. It reasoned: "When a homeowners' association seeks to enforce the provisions of its CCRs to compel an act by one of its member owners, it is incumbent upon it to show that it has followed its own standards and procedures prior to pursuing such a remedy, that those procedures were fair and reasonable and that its substantive decision was made in good faith, and is reasonable, not arbitrary or capricious. [Citations.]" (*Id.* at p. 772.) The appellate court found summary judgment was precluded because questions of material fact existed as to whether the association followed its own procedures as set forth in the CC&R's. (*Id.* at pp. 772–773.)

Here, the injunction was granted following a trial at which there was adduced evidence that the board was advised that the air conditioner compromised the structural integrity and watertightness of the building, appellant was given notice and an opportunity to be heard by the board of directors and the judicial committee. After considering the matter, the board concluded that the air conditioner should be removed because it was unsightly and because it compromised the structural integrity and watertightness of the building. This constituted substantial evidence that the association followed its own standards and procedures, that those procedures were fair and reasonable, and that

the decision to require appellant to remove the air conditioner and repair the wall was made reasonably and in good faith. To the extent there may have been conflicting evidence, the trial court resolved those conflicts against appellant.

*The Court Balanced the Hardships*

Appellant contends the trial court did not appropriately balance the relative hardships. She argues the CC&R's contain no specific prohibition against air conditioners, appellant's air conditioner was not visible from any common area and appellant needed the air conditioner because heat from the closet radiates into the bedroom during the summer. We disagree.

Appellant's assertions are contrary to the evidence adduced at trial. Although she is correct that there is no specific prohibition against air conditioners, the CC&R's and respondent's policy on architectural control expressly prohibit "interior alterations affecting the structural integrity of the unit without the prior written approval of the Architectural Committee." The CC&R's also prohibit unsightly objects from protruding through exterior walls. The engineer testified that appellant's air conditioner, which the parties stipulated was installed through a wall between her closet and the balcony, compromised the structural integrity of the building. Phelps testified that the air conditioner was visible from the sidewalk in the common area. Finally, defendant testified at her deposition that the air conditioner was used to cool only the closet, not any other living area. Again, to the extent appellant testified otherwise at trial, this was a conflict in the evidence that the trial court apparently resolved against her. We see no reason to disturb that finding.

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.

Cooper, P. J., and Boland, J., concurred.