Filed 8/23/21  Marriage of Daneman CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re the Marriage of DEBORAH and ALEX G. DANEMAN. | |
| DEBORAH DANEMAN,<br><br>        Respondent,<br><br>v.<br><br>ALEX G. DANEMAN,<br><br>        Appellant. | A159773<br><br>(Marin County<br>Super. Ct. No. FL 000821) |

Appellant Alex G. Daneman (Husband) appeals from a January 2020 spousal support order in favor of respondent Deborah Daneman (Wife).  We affirm the trial court's order.

BACKGROUND

Husband and Wife filed a stipulated judgment of dissolution in May 2011, which was accompanied by an attachment and a May 2006 marital settlement agreement (MSA).  According to the MSA, the parties were married in 1977, and Wife filed the dissolution action in 1996.

The MSA divided the marital property, and provided that Wife would receive certain investment income from Husband and would not seek spousal support from Husband unless he failed to make the investment income

1

payments, if he bore responsibility for that failure. The attachment to the 2011 stipulated judgment specified that Husband would pay Wife $1,277 per month. During 2019, Husband failed to make a number of the monthly payments, and, in August 2019, Wife petitioned for an order of postjudgment spousal support. Husband opposed the request, and the trial court conducted an evidentiary hearing on January 2, 2020 that included testimony from Husband, Wife, and an expert retained by Wife.

On January 8, 2020, the trial court entered an order granting Wife's request for spousal support, ordering Husband to pay her $3,000 per month, commencing in September 2019 "and continuing until Wife's death or remarriage, or further order of court, whichever shall first occur. In view of the parties' agreement in their stipulated judgment, spousal support shall not terminate upon Husband's death." The trial court also concluded there were arrearages of $11,493, plus interest, because Husband failed to pay Wife the $1,277 a month owed to her in nine months in 2019. The court also ordered Husband to pay Wife $7,500 for attorney's fees.

The present appeal followed.[1]

## DISCUSSION

On appeal, Husband challenges the duration and amount of the trial court's support order. We reject his claims.

---

[1] According to Husband, in November 2020 the trial court entered a contempt order against him due to his failure to comply with the trial court's support order. Husband challenges the entry of the order and the sentence imposed by the court in two writ proceedings (A161532, A161937) that will be decided separately.

I.    *Background*

　　A.    *The Stipulated Judgment and MSA*

The attachment to the 2011 stipulated judgment stated that, since execution of the MSA, "certain events have transpired which are the basis for the additional terms set forth herein.  Except as specifically modified here, the terms of the MSA are incorporated herein."

The MSA contains provisions disposing of various marital assets, including, as relevant on appeal, the proceeds from the sale of a home in Tiburon held in trust at a title company.  Paragraph 2.4 of the MSA requires Husband to invest his share of those proceeds.  Paragraph 2.4 further states, "All of the investment income emanating from Husband's investment of his share of the house sale proceeds shall be distributed to Wife on a quarterly basis after first deducting the projected federal and state income taxes attributable to said investments . . . ."

Paragraph 2.4 of the MSA also contains a provision specifically addressing termination of the obligation, stating, "Should Wife predecease Husband, all obligations with respect to the income distributions to [W]ife under this paragraph 2.4 shall cease and be of no further effect.  Should Husband predecease Wife, the obligations under paragraph 2.4 shall continue in full force and effect and shall be an obligation of Husband's estate."  That language is consistent with a prior general statement in the MSA that "The objective of this Agreement is to maximize the income from the remaining community assets for use by Wife during her lifetime in lieu of spousal support from Husband."

Paragraph 3.2 of the MSA explains that the investment income is a substitute for spousal support, stating, "It is the intention of the parties that by reason of Husband's agreement to share his investment income under the

3

provisions of paragraph 2.4 for Wife's life, spousal support will not be paid by Husband to Wife. Only in the event that (a) Husband deliberately defaults on the obligation to provide income or (b) the income from Husband's share of the investment income is not paid to Husband for reasons within his control may Wife seek spousal support from Husband. The Court retains jurisdiction to award spousal support under a proper showing by Wife in these limited circumstances. Otherwise, Wife waives spousal support from Husband and recognizes that she will not be able to seek spousal support at any future date for any reasons other than the circumstances described in this paragraph."

The attachment to the 2011 stipulated judgment states that "[a]fter the MSA was signed and proceeds from the sale of the Tiburon residence were distributed, Husband used a portion of his share of the proceeds [from sale of the parties' home] to acquire a business, Hench Control Systems [HCIS]. . . . Husband represents that his income averages about $4,000 per month at this time." The attachment also stated that Wife's medical condition had worsened and that she was living at "subsistence level only." The attachment to the stipulated judgment provides that Husband "will continue the monthly payments of $1,277 per month to Wife so long as he is financially able to do so. In addition he will on a voluntary basis provide whatever other assistance he can."

B.    *Evidence at the Contested Hearing and the Trial Court's Ruling*

At the evidentiary hearing on January 2, 2020, Husband testified he worked sixty hours a week and earned on average $400 per week from his company, HCIS. He also received $2,400 per month in Social Security. He testified that he had loaned HCIS around $300,000, and that the company had not made a profit in recent years. Husband also presented somewhat unclear testimony regarding his personal and real property assets, as well as

4

his expenses. He was unable to explain certain significant discrepancies on his income and expense statement and on corporate tax returns filed by HCIS.

Also at the January 2020 hearing, Wife presented expert testimony from a forensic accountant, Richard Schiller. He testified, "It's very difficult to make any sense out of anything that [Husband] has said or that the tax returns reflect. I believe that they are significantly incorrectly prepared." Importantly, Mr. Schiller testified that HCIS had improperly taken an amortized deduction for $2 million in software that Husband testified the company did not pay for. Mr. Schiller called the return "a completely fabricated tax filing" and observed that the $2 million was being amortized over a 15-year period. Deductions had already been taken for nine of the years, leading Mr. Schiller to comment, "So, in effect, he's under reported his income taxes for the last nine years by $133,000.00." The expert also testified that business activity from HCIS before it was incorporated should have been reflected on Husband's 2017 individual tax returns, but was not. Mr. Schiller testified the corporate tax returns reflected a deduction for interest expenses even though Husband had testified the company had no debts. The expert also referenced a "very questionable" $387,000 "earn out payable." He commented, "So, once again, what we're seeing is that there's line items that don't appear to make any sense." On cross-examination, Husband's attorney elicited from Mr. Schiller that the HCIS tax returns showed a negative taxable income, but he did not question the expert about any of the irregularities the expert had identified. Neither did Husband offer additional testimony or documentary evidence to explain any of the irregularities.

5

Wife was the final witness at the evidentiary hearing. She testified that, among other things, Husband was nine months in arrears on the $1,277 payments specified in the 2011 stipulated judgment and that she was requesting $4,500 per month in support because that was the amount necessary to cover her living expenses.

On January 8, 2000, the trial court entered a written order granting Wife's request for spousal support. The main thrust of Husband's opposition to the request for spousal support had been that Wife was required to show a material change of circumstances in order to obtain a support order (see *Marriage of West* (2007) 152 Cal.App.4th 240, 246), and that Wife had not shown that either of the conditions described in paragraph 3.2 of the MSA had been satisfied. The trial court rejected those contentions, concluding that, under the MSA, the relevant question was not whether there was a change of circumstances but whether the circumstances described in the MSA had occurred. Based on the evidence at the January 2 hearing, the trial court concluded that both of those circumstances *had* occurred. That is, the court concluded that Husband had deliberately defaulted on his obligation to pay Wife his investment income and/or that the income had not been paid to him for reasons within his control. The trial court observed that the stipulated judgment contemplated that Husband would pay Wife from his return on his HCIS investment, stating, "Although it was not specified in the stipulated judgment, it is clear from the parties' submissions that the $1,277 per month figure relates to Wife's share of Husband's income from HCIS, Inc., Husband's wholly owned corporation." Appellant does *not* challenge any of those findings on appeal.

6

In making the spousal support determination, the trial court considered the 14 factors listed in Family Code section 4320.[2] The court noted that Wife's financial resources were minimal: her health was "deteriorating," the parties agreed in 2011 that she "was living at a 'subsistence level only,' " her only asset is her home, and she is unable to work. On the other hand, the trial court found that Husband reported no obligations and that "[h]e owns a community interest in a waterfront home in Richmond, an 80' yacht, two cars, and his corporation, HCIS, Inc. The value of his holdings is unknown, because Husband has not been candid with Wife or with this court."

On the subject of Husband's income, the trial court found that his testimony and his financial disclosure form "are not credible on the issue of his finances." The trial court relied in part on Mr. Schiller's expert testimony, explaining that the expert had testified the corporate "tax returns were inconsistent with [Husband's] sworn testimony. Husband testified that he purchased the software for HCIS, Inc. for nothing. Nevertheless, he carries it on his books at an acquisition value of $2,000,000. Mr. Schiller testified that Husband cannot write off software that he has not paid for, and therefore, Husband has been pocketing about $133,000 per year for the last 11 years in illegitimate write-offs."

In determining Husband's income at the time of the January 2020 order, the trial court noted that the parties agreed his income was $4,000 per month at the time of the 2011 stipulated judgment, and stated, "It is difficult to know exactly how much income Husband enjoys at the present time, but based on Mr. Schiller's uncontradicted analysis, it appears to be at least

_____

[2] All undesignated statutory references are to the Family Code.

7

$15,750 per month ($133,000 + $56,000 = $189,000 ÷ 12 = $15,750),[3] and that income appears to be tax free." The trial court also observed, "when, as in this case, a spouse has committed perjury on his income and expense declarations, the court may rely on other evidence to determine that party's income."

As noted previously, the trial court ultimately ordered Husband to pay Wife $3,000 a month in spousal support—continuing until Wife's death or remarriage, or further order of the court—in addition to arrears and attorney fees.

II.    *Analysis*

On appeal, Husband does not contend the trial court erred in concluding that, under the MSA, Wife is entitled to seek spousal support. Neither does Husband contend the trial court erred in ordering him to pay $11,493, plus interest, in arrearages and $7,500 for attorney's fees. Instead, Husband contends that the duration of the trial court's support order violates section 4337 and that the court abused its discretion in determining the amount of the support order. Husband has not shown error.

A.    *Section 4337*

Section 4337 provides, "Except as otherwise agreed by the parties in writing, the obligation of a party under an order for the support of the other party terminates upon the death of either party or the remarriage of the other party." "Although a written agreement between the parties is required to waive the provision of section 4337, '[n]o particular words are required. [Citation.] On the other hand, silence will not do. [Citation.]' " (*In re Marriage of Martin* (2019) 32 Cal.App.5th 1195, 1199.)

---

[3] It appears the trial court mistakenly stated $56,000 rather than $48,000, which is $4,000 times 12 months.

8

The trial court's support order states, "In view of the parties' agreement in their stipulated judgment, spousal support shall not terminate upon Husband's death." Husband argues the 2011 attachment and the 2006 MSA do not contain an agreement to continue support after Husband's death, so the support order is in excess of the court's authority. Contrary to Husband's contention, the MSA expressly sets forth the parties' intent to provide for Wife after Husband's passing. Thus, paragraph 2.3 states, "The objective of this Agreement is to maximize the income from the remaining community assets for use by Wife during her lifetime in lieu of spousal support from Husband." And paragraph 2.4.d states, "Should Husband predecease Wife, the obligations under paragraph 2.4 shall continue in full force and effect and shall be an obligation of Husband's estate." It was reasonable for the trial court to construe the spousal support order authorized by paragraph 3.2 as a replacement for the investment income support provided for in paragraph 2.4. And nothing in the 2011 attachment modifies that aspect of the MSA.[4]

Husband's briefs on appeal fail to address any of the specific language in the MSA, so Husband has necessarily failed to show there is another reasonable interpretation of the agreement. We observe that, if the agreement is interpreted to terminate support under paragraph 3.2 upon Husband's death, then Husband could at any time eliminate the obligation to provide lifetime support to Wife by intentionally defaulting on the investment income payments. That would be directly contrary to the express intent of the MSA to provide support for Wife's lifetime, as set forth in paragraph 2.3.

---

[4] Husband points out that the 2011 attachment only requires him to make payments "so long as he is financially able to do so," but that is not inconsistent with the trial court's order. The court found he *is* able to pay and any question as to his estate's ability to pay is premature.

" 'Section 4337 does not go so far as to require a written agreement *expressly stating* that the' " death of the party providing support " 'will not terminate spousal support.' " (*In re Marriage of Martin, supra,* 32 Cal.App.5th at p. 1202.)  Husband has not shown the trial court erred.

B.    *The Amount of the Support Award*

"Permanent spousal support 'is governed by the statutory scheme set forth in sections 4300 through 4360.  Section 4330 authorizes the trial court to order a party to pay spousal support in an amount, and for a period of time, that the court determines is just and reasonable, based on the standard of living established during the marriage, taking into consideration the circumstances set forth in section 4320.'  [Citations.]  The statutory factors include the supporting spouse's ability to pay; the needs of each spouse based on the marital standard of living; the obligations and assets of each spouse, including separate property; and any other factors pertinent to a just and equitable award.' " (*In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 108.) " ' "In making its spousal support order, the trial court possesses broad discretion so as to fairly exercise the weighing process contemplated by section 4320, with the goal of accomplishing substantial justice for the parties in the case before it." ' " (*Ibid.*)

Husband argues the trial court "miscalculated" his income in determining the appropriate amount of support.  He argues there was no foundation for Mr. Schiller's testimony because it was based only on tax returns for the 2017–2018 period.  But he fails to explain why he was prejudiced by any testimony that contained assertions regarding prior periods.  Husband also complains that the court predicated its support order in 2019 in part on the expert testimony based on the 2017–2018 returns, but Husband's counsel represented to the court that the returns provided were

10

"the most recent year prepared" and "all that was available." Husband fails to explain how it was error for the court to base its support order on the most recent information *he* provided. (See *In re Marriage of Berman* (2017) 15 Cal.App.5th 914, 925–926 ["Nor did the court abuse its discretion in using the 2014 income in particular, as this was the only tax return presented to the court."].)

Husband also argues it was improper to treat the $133,000 in improper annual deductions taken by HCIS as Husband's income. He points out that "[a] tax deduction is applied to reduce income before determining the tax owed," and that the deductions "increased HCIS' post-tax profits, the funds used to pay" Wife. He continues, "[t]here is no evidence that those profits were paid to [Husband], who reported none on his taxes."

At the outset, we observe that Husband has forfeited his claims by failing to raise them below. " 'As a general rule, issues not properly raised at trial will not be considered on appeal.' " (*In re Marriage of Olson* (1993) 14 Cal.App.4th 1, 15; see also *In re Marriage of Brewster & Clevenger* (2020) 45 Cal.App.5th 481, 512 ["A party implicitly waives or forfeits claims of error if he or she fails to bring the error to the trial court's attention in an appropriate manner."].) This is because " '[i]t is unfair to the trial judge and to the adverse party to take advantage of an alleged error on appeal where it could easily have been corrected at trial.' " (*Cabrini Villas Homeowners Assn. v. Haghverdian* (2003) 111 Cal.App.4th 683, 693.) Although Husband made general objections to Mr. Schiller's testimony below regarding Husband's underreported income ("[m]isstates the evidence; misstates prior testimony . . . [i]t lacks foundation"),[5] he did not cross-examine Mr. Schiller on the issue,

---

[5] Husband does not argue the trial court erred in overruling his objections.

11

he did not present evidence controverting Mr. Schiller's testimony, and he did not argue at the end of the hearing that the trial court could not rely on Mr. Schiller's testimony for the reasons posited on appeal.

Furthermore, financial records provided by Husband support the trial court's finding that Husband could pay support from HCIS's profits, regardless of how the improper deduction impacted HCIS's taxes. In particular, Husband cites to HCIS's 2017–2019 "Profit & Loss" statements to support his assertion that there were no profits for HCIS to disburse to Wife. The 2017 statement shows a "Net Income" of negative $110,355.38, but it lists as expenses $112,837 for "Depreciation/Amortization"[6] and $17,735.42 for "Interest Expense." Mr. Schiller testified there was no basis for those claimed expenses. Regarding the latter expense, Mr. Schiller testified any claimed interest expenses were improper in light of Husband's testimony the company had no debts. The 2018 statement shows a "Net Income" of only $3,213.84, but it lists an improper "Interest Expense" of over $20,000. And the 2019 statement, which covers through October 2019, actually shows a *profit*—a "Net Income" of over $66,000, which should actually be higher under Mr. Schiller's analysis because the statement includes an improper "Interest Expense" of over $11,000.[7] Thus, documents provided by Husband,

_____

[6] Mr. Schiller explained the 2017 depreciation was less than $133,000 because it was for a ten-month period. In his testimony he said 2017 depreciation was $111,000, which was the amount on the corporate tax return. It is not clear why the 2017 Profit & Loss statement lists the amortized depreciation amount as $112,837, but the trial court could infer that was the same depreciation testified to by Mr. Schiller because there is no evidence of other significant sources of depreciation.

[7] The 2019 statement also lists an unexplained "Bad Debt Expense" of over $59,000.

12

when viewed in light of Mr. Schiller's uncontroverted testimony, support the trial court's finding that Husband has the ability to pay the ordered support.

Further, Husband's argument disregards the trial court's finding that Husband's financial evidence was not credible. (See *In re Marriage of Brewster & Clevenger, supra,* 45 Cal.App.5th at p. 500 ["As the judge of credibility, the trial court may reject evidence, even uncontradicted evidence, as unworthy of credence."]; *In re Marriage of Dick* (1993) 15 Cal.App.4th 144, 160 ["It is clear that the trial court utterly disbelieved [the husband], and its assessment of husband's credibility is binding on this court."].) Indeed, the trial court stated that Husband had "committed perjury on his income and expense declarations." Husband does not challenge that finding on appeal, which is supported both by Husband's evasive testimony and by Mr. Schiller's testimony regarding the irregularities in HCIS's tax returns. Given the trial court's finding regarding Husband's dishonesty, it was not obligated to take any of the financial records or Husband's testimony at face value, including Husband's claims about the amount of HCIS's profits, about his ability to pay, or about the accuracy of the corporate and personal tax returns.

Finally, Husband fails to show any error was prejudicial. " 'It is a fundamental principle of appellate jurisprudence in this state that a judgment will not be reversed unless it can be shown that a trial court error in the case affected the result.' " (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 822.) Husband does not argue the trial court erred in finding he continued to make the $4,000 in income described in the 2011 stipulated judgment; he does not show he realized no benefit from HCIS's improper deductions and other accounting irregularities; he does not argue his assets could not support the award (including his loan to HCIS, his 80-foot yacht, and his interest in his current home) (see § 4320, subds. (c) &

13

(e)); and he does not deny Wife's dire health and economic circumstances (see § 4320, subds. (e), (h), & (k)). In other words, Husband articulates no argument why, in light of the statutorily mandated considerations, it is "reasonably probable" the support order would have been more favorable, even if we assume the trial court erred in treating the entirety of the improper deductions as Husband's income. (*Falcone & Fyke,* at p. 822.)

Husband has not shown the trial court erred in entering the challenged spousal support order.[8]

## DISPOSITION

The trial court's order is affirmed. Costs on appeal are awarded to respondent Wife.

_____

SIMONS, Acting P. J.

We concur.

_____

NEEDHAM, J.

_____

BURNS, J.

(A159773)

---

[8] We also reject Husband's argument that the trial court's order "fails to identify any source of income from which that support is to, or even could, derive." Husband has not shown the court erred in concluding Husband was able to pay the ordered support.

14