Filed 3/13/23  A.S. v. R.S. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| A.S.,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>R.S.,<br><br>        Defendant and Respondent. | D080062<br><br><br><br><br>(Super. Ct. Nos. 20FL010374C<br>& 21FL011075C) |

APPEAL from an order of the Superior Court of San Diego County, Jinsook Ohta, Judge.  Affirmed.

Law Office of Patrick L. McCrary, Patrick L. McCrary; Fleischer and Ravreby and Myra C. Fleischer for Plaintiff and Appellant.

Law Office of Linda Cianciolo, Linda Cianciolo; Law Offices of Colleen A. Warren and Colleen Anne Warren for Defendant and Respondent.

In this family law matter, the unmarried parents of three minor children lived together as a family in a house owned by R.S. (Father).  That was until A.S. (Mother) obtained an ex parte temporary restraining order (TRO) against Father by alleging that he had engaged in domestic violence.

Father denied the allegations, but the TRO included a kick-out order that forced him to vacate the residence and live temporarily in a hotel. Father nonetheless voluntarily paid $4,000 per month to help support the children. Mother lived with the children in Father's home for more than six months—an extended time period due to the COVID-19 emergency—until she elected to dismiss her restraining order request before any hearing was held. At that point, Father moved back into the house, but Mother refused to leave. So they lived together with the children for another six months until the court ordered Mother to vacate.

In response to a request for order (RFO) filed by Mother, the family court made orders for custody/visitation and for guideline child support payable by Father to Mother. At the same time, the court gave Father credit for past child support payments he voluntarily made and housing expenses he incurred for the children. Mother appeals, contending that the court's order crediting Father for the children's housing expenses violated her due process rights, was contrary to the uniform child support guideline, and was not supported by substantial evidence.

We agree with Father that Mother forfeited her claims of error because she never objected to the housing expense credit in the family court. Even if she had objected, we conclude the trial court properly credited Father for the children's housing expenses under applicable law and based on substantial evidence. We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Father and Mother have three minor children together. Although they never formalized their marriage, they held themselves out as a married couple. According to Mother, she was the "primary caretaker" of the children, while Father was "the sole financial provider" for the family. Father claimed

2

he "consistently helped care for and raise [their] children during their entire lives." Father earned $46,034 a month in 2021 as the chief executive officer of a multimillion-dollar marketing company. Mother earned $10,580 a month as a public relations director at the same company and received a household allowance of $2,000 from Father until November 2020, when Father "abruptly terminated" both employment and allowance.

In November 2020, Mother filed a request for domestic violence restraining order, claiming that Father "has a history of being emotionally and physically abusive toward [her] and [their] children." A temporary restraining order was granted on an ex parte basis, and that same month, Father left his house to stay at a hotel. Father maintained that Mother's allegations of abuse were "completely and utterly false."

In December 2020, Mother filed a petition for dissolution, claiming a common law marriage under Colorado law. She also requested orders on child custody and support.[1] Beginning that same month, Father (without a court order) began to provide Mother $4,000 per month in child support. The court held an evidentiary hearing in June 2021 and determined there was no common law marriage. It specifically found that Mother's testimony was not credible.

In July 2021, Mother withdrew her request for a restraining order and Father moved back into the house. Also in July, Father reduced his child support payments to $1,200 a month because Mother refused to vacate the

---

[1]     The dissolution case (No. 20FL010374C) was consolidated with the custody, visitation, and child support case (No. 21FL011075C) and the latter was designated as the lead case.

3

house, even though she had "no right or title [to the home]," and he was paying for the mortgage and for all of the housing expenses.

In September 2021, Mother filed another petition for child custody and support, which superseded the previous petition. A hearing on the issue of support was set for November 9, 2021. In anticipation of that hearing, Father filed a declaration requesting "credit for paying the *children's housing expenses* while in [Mother's] care." (Italics added.) Father's attorney also asked the court at the hearing, "if support goes back retroactive to December 20 of 2020, which is the date that the RFO was filed, we would ask that the Court order that [Father] receive credit for any payments that he has made directly to [Mother] or on the behalf of the children during that time. Of course, counsel—we would have to meet and confer as to that amount. We have not yet done so."

The court entered custody orders giving Father a 38 percent timeshare with the children. Based on his 38 percent timeshare, the court calculated guideline child support for Father at $6,772 per month retroactive to January 1, 2021, the first of the month following the filing of Mother's RFO. The court also ordered Father to pay all arrearages in child support by December 1, 2021.

Pursuant to Father's request for housing expense credits, the court stated that he would be credited against the arrearages for 100 percent of fair rental value (FRV) of the house while Mother and the children occupied the house exclusively (November 2020 through July 2021), and 50 percent while they cohabitated together with Father (July through December 2021).[2] The

---

[2]     The family court also ordered Mother to move out of Father's house by January 1, 2022.

4

court further ordered the parties "to meet and confer about any arrearages for past payments that have not been made up to this amount, but also any offsets for payments that have already been voluntarily made toward this amount."

## DISCUSSION

Mother contends the trial court committed three errors. She first argues that the order crediting Father's past payments against his arrearages in child support is inconsistent with the uniform child support guideline under Family Code section 4053. She also maintains she was not afforded notice and opportunity to address the credit issue before it was decided. Finally, she asserts there was no substantial evidence to support the court's determination that Father was entitled to credits of 50 percent of the FRV of the property when Mother, Father, and children resided there and 100 percent when only Mother and children occupied the home. Father counters that Mother forfeited her claims of error because these objections were never raised in the trial court.[3]

A.    *Forfeited Claims*

"Forfeiture" is "the loss of the right to raise an issue on appeal due to the failure to raise it in the trial court." (*DiPirro v. Bondo Corp.* (2007) 153 Cal.App.4th 150, 177, fn. 18.) " 'For better or worse, California child support law now resembles determinate sentencing in the criminal law: The actual calculation required of the trial judge has been made so complicated [citation] that, to conserve judicial resources, any errors must be brought to

_____

[3]    Father also argues that Mother's opening is brief is not supported by proper citations to the record. We disagree and conclude the record submitted, along with the citations provided in the Mother's briefs, are sufficient.

5

the trial court's attention at the trial level while the [theoretical] error can still be expeditiously corrected.' " (*In re Marriage of Calcaterra & Badakhsh* (2005) 132 Cal.App.4th 28, 37.) " 'This rule is based on fairness—it would be unfair, both to the trial court and the opposing litigants, to permit a change of theory on appeal.' " (*Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 548.) We agree with Father that any claim of error Mother seeks to assert on appeal was forfeited by her failure to raise it in the trial court.

Under a section of his declaration entitled "**CHILD SUPPORT**," Father stated, "I believed after the restraining order was dropped that [Mother] would finally move out of my home, to which she has no right or title, but she has remained. She must move out, but until she does, *I request credit for paying the children's housing expenses* while in [Mother]'s care." (Italics added.) At the hearing, Father again requested credit "for any payments that he has made directly to [Mother] *or on the behalf of the children*" if the court ordered retroactive child support. (Italics added.) Agreeing with the request, the court ordered that Father be credited against the arrearages for half the FRV of the house while Father and Mother were living there together with the children, plus the full FRV while Mother was living alone with the children. It directed the parties to meet and confer with regard to the FRV of the house.

Mother said nothing about Father's request for credit in her reply declaration. And at no point during the November 2021 hearing did Mother's counsel take issue with Father's request, either before or after the court's ruling on the credit issue. Despite asking other questions of the court after its ruling was announced, counsel made no mention of the housing expense credit. Nor did Mother file a motion for reconsideration. Now on appeal,

6

Mother claims for the first time that the trial court erred in crediting the Father for the FRV of the house.

" 'It is unfair to the trial judge and to the adverse party to take advantage of an alleged error on appeal where it could easily have been corrected at trial.' " (*Cabrini Villas Homeowners Assn. v. Haghverdian* (2003) 111 Cal.App.4th 683, 693.) Here, nothing prevented Mother from raising any concerns she had about the credit issue at some point in the family court proceedings, but she did not. Her failure to do so forfeited any claim of error. (See *In re Javier G.* (2006) 137 Cal.App.4th 453, 464 ["Generally, issues not raised in the trial court cannot be raised on appeal."].)

B.      *Merits of the Housing Expense Credit*

Even if we considered Mother's arguments on the merits, we are unpersuaded that the court's decision to credit Father for the housing expenses either (1) violated her due process rights; (2) contravened the uniform child support guideline; or (3) was unsupported by substantial evidence.

At its most basic level, procedural due process requires notice and the opportunity to be heard. (See *Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212.) Here, Mother was afforded sufficient notice based on Father's request in his declaration for "credit for paying the children's housing expenses while in [Mother]'s care." At the hearing, the court found "[b]oth parties received notice and opportunity to be heard," a finding to which Mother's counsel raised no objection. Mother could have responded to the request in her reply declaration, and she had an additional opportunity to challenge it at the hearing. Due process requires the opportunity to be heard. It does not protect against lost opportunities. There was no due process violation.

We review child support orders for abuse of discretion. (*In re Marriage of Hein* (2020) 52 Cal.App.5th 519, 529.) In conducting this review, we assess "(1) whether the trial court's factual findings are supported by substantial evidence, (2) whether the trial court followed applicable legal principles, and (3) whether the trial court reasonably exercised its discretionary authority—that is, whether any judge reasonably could have made such an order." (*Ibid.*)

In family law, courts are required to calculate child support in accordance with the uniform child support guideline. (See Fam. Code, § 4055; see also *In re Marriage of Williamson* (2014) 226 Cal.App.4th 1303, 1312.) There is no dispute the $6,772 per month in retroactive child support the court ordered is consistent with the guideline. Notably, Mother does not argue the family court deviated from the guideline by crediting Father for "past child support payments," namely the $1,200 and $4,000 monthly payments he voluntarily made. Mother contends rather that "the court deviated from guideline support by *reducing* the amount of support payable by [Father] based upon the rental value of the home." Mother again cites no authority for treating the children's housing expenses that Father incurred as a "reduction" to the child support payment, as opposed to credit for the child support Father provided prior to the court order. (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [an appellant bears the burden of establishing error by citing to the appropriate authority].)

Nor do we see a material or legal distinction between credit for the monetary payments Father made and credit for the housing expenses he incurred in this circumstance. (See also *Maughan v. Google Technology, Inc.* (2006) 143 Cal.App.4th 1242, 1249 [" 'In the absence of a clear showing that its decision was arbitrary or irrational, a trial court should be presumed to

8

have acted to achieve legitimate objectives and, accordingly, its discretionary determinations ought not be set aside on review.' "].)  It was well within the trial court's discretion to consider whether "a parent has satisfied his or her support obligation in a manner *other than direct financial payments*" (*In re Marriage of Tavares* (2007) 151 Cal.App.4th 620, 626, italics added), which in this case includes the children's housing expenses that Father incurred concurrently with and in addition to the financial payments he voluntarily made.  (See also *Y.H. v. M.H.* (2018) 25 Cal.App.5th 300, 307 [It is within the court's discretion to " 'give credit for past overpayment' " or " 'take into consideration "whether the debtor had *satisfied or otherwise discharged* the obligation imposed by the original order" ' " (italics added)].)[4]  We therefore conclude the court's consideration of Father's housing expenses as credit does not amount to an impermissible deviation from the guideline.[5]  (See *Keith G. v. Suzanne H.* (1998) 62 Cal.App.4th 853, 858–860; *In re Marriage of Trainotti* (1989) 212 Cal.App.3d 1072, 1075–1076; see, e.g., *In re Marriage of*

---

[4]     Mother concedes she "does not raise the issue on this appeal of whether the court may give credit against a child support order for providing housing for the children."

[5]     "Whenever a trial court orders a child support amount that differs from the guideline amount it is required to state, either in writing or on the record, '[t]he reasons the amount of support ordered differs from the guideline formula amount' and why 'the amount of support ordered is consistent with the best interests of the [child].' " (*S.P. v. F.G.* (2016) 4 Cal.App.5th 921, 935, citing Fam. Code, § 4056, subd. (a)(2), (3).)  Mother contends the trial court failed to explain its reasoning, as required by Family Code section 4056, for deviating from the guideline.  Because we reject the underlying premise that the trial court deviated from the guideline, Family Code section 4056 was not triggered and the trial court had no obligation to explain a nonexistent deviation.

*Braud* (1996) 45 Cal.App.4th 797, 807, 819 [concluding that it was not an abuse of discretion for the trial court to credit the husband, as a result of his loss of use of the house that he and his wife co-owned, for up to 50 percent of the net FRV against his child support obligation].)

Finally, contrary to Mother's assertion, substantial evidence supports the court's decision to credit Father for either 50 or 100 percent of the FRV, depending on whether he was living in the home with Mother and the children. Both parties agree in their declarations that Father moved out of the house to live in a hotel in November 2020, when Mother filed her temporary restraining order, until July 2021, when he moved back into the house because the temporary restraining order was dismissed. Father also attests he owns the house and was paying $4,271 for the mortgage, $1,116 for property taxes, and $700 in other housing-related expenses. Mother's attorney readily conceded at the November 2021 hearing that her client was still living at the house. Father only sought credit against the arrearages because Mother refused to vacate the house.

"The term 'substantial evidence' means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion; it is evidence which is reasonable in nature, credible, and of solid value." (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.) The evidence offered by Father on this point is not merely reasonable in nature, credible, and of solid value— Mother does not dispute it. Accordingly, we cannot say the family court's decision to credit father for the housing expenses he incurred lacks substantial evidence.

Mother asserts there was no evidence to support the percentages chosen by the court to calculate Father's credits. But the evidence consisted of the foundational facts. Father paid the mortgage and all other expenses on

10

a house he owned and could not live in for several months. Thereafter, Mother (who claimed to be the primary caretaker for the children) refused to vacate Father's home despite his request that she do so. We understand the court could have chosen a different percentage for the period of time both parties cohabitated with the children, but we cannot say the choice of 50 percent was unreasonable, and Mother offers no reasoned argument to explain why it is. When it comes to matters of discretion, "[a]n appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." (*Estate of Gilkison* (1998) 65 Cal.App.4th 1443, 1449.)[6]

## DISPOSITION

The judgment is affirmed. Father is entitled to costs on appeal.

DATO, J.

WE CONCUR:

McCONNELL, P. J.

BUCHANAN, J.

---

[6] Because we concluded there was no error, we need not and do not reach the question of prejudice.